FILED
United States Court of Appeals
Tenth Circuit

April 19, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CELSO TOLON MARTINEZ,

Defendant - Appellant.

No. 09-6049

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:08-CR-00163-M-1)**

Submitted on the briefs:[*]

Raymond P. Moore, Federal Public Defender, (Vicki Mandell-King, Assistant
Federal Public Defender, with him on the briefs), Denver, Colorado, for
Defendant - Appellant.

Robert J. Troester, Acting United States Attorney, (Chris M. Stephens, Assistant
United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for
Plaintiff - Appellee.

Before **HARTZ**, **SEYMOUR**, and **GORSUCH**, Circuit Judges.

[*]After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

**HARTZ**, Circuit Judge.

Celso Tolon Martinez was sentenced to 180 months' imprisonment by the United States District Court for the Western District of Oklahoma. The only questions on appeal are whether his two prior attempted-burglary convictions in Arizona should have been used to enhance his sentence under the United States Sentencing Guidelines and under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). The district court ruled that the Arizona offense of attempted second-degree burglary is a "crime of violence" under the guidelines and a "violent felony" under the ACCA. We have jurisdiction under 28 U.S.C. § 1291. We agree that the Arizona offense is a crime of violence; but it is not a violent felony under the ACCA. Therefore, we reverse Mr. Martinez's sentence and remand for resentencing.

## I.    BACKGROUND

Mr. Martinez pleaded guilty to being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). He had previously been convicted twice in Arizona of attempted second-degree burglary. The probation office's presentence report (PSR) treated the two offenses as crimes of violence, giving him a base offense level of 24. *See* USSG § 2K2.1(a)(2) (2008). It also treated the two offenses, as well as his prior Arizona offense of second-degree burglary, as violent felonies. Because he had been convicted of three prior violent felonies, his felon-in-

possession sentence was affected in two ways. First, his sentence was enhanced under the ACCA, which required a minimum sentence of 15 years (180 months). *See* 18 U.S.C. § 924(e)(1). Second, because he was subject to an enhanced sentence under the ACCA, his guidelines offense level was raised to 33. *See* USSG § 4B1.4(a), (b)(3)(B). After adjustments for various other factors, his total offense level was computed to be 30 and his criminal-history category was VI. The corresponding advisory guideline range was 168 to 210 months' imprisonment. This was modified to a range of 180 to 210 months because of the ACCA mandatory minimum of 180 months. *See id.* § 5G1.1(c)(2).

Mr. Martinez objected to the PSR, contending that his attempt offenses were not crimes of violence or violent felonies. The district court overruled his objections and sentenced him to 180 months' imprisonment. He appeals, arguing that the Arizona offense of attempted burglary (1) is not a crime of violence under the guidelines, and (2) is not a violent felony under the ACCA. We begin with the ACCA issue.

## II.    DISCUSSION

### A.    ACCA—Violent Felony

Whether a prior offense is a violent felony under the ACCA is a legal question that we review de novo. *See United States v. Hernandez*, 568 F.3d 827, 828 (10th Cir. 2009). The ACCA imposes a 15-year minimum sentence on

defendants who violate 18 U.S.C. § 922(g) and "ha[ve] three previous convictions

. . . for a violent felony." 18 U.S.C. § 924(e)(1). A *violent felony* includes

> any crime punishable by imprisonment for a term exceeding one year
> . . . that—
> (i) has as an element the use, attempted use, or threatened use of
> physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or
> otherwise involves conduct that presents a serious potential risk of
> physical injury to another.

*Id.* § 924(e)(2)(B). To determine whether an offense is a violent felony, we

"generally look[] only to . . . the statutory definition of the . . . offense."

*Hernandez*, 568 F.3d at 829 (internal quotation marks omitted). The parties agree

that clause (i) does not apply here, and the government does not suggest that this

case involves an offense enumerated in clause (ii). Therefore, we need consider

only whether attempted burglary is a violent felony under clause (ii)'s residual

provision—that is, whether it "otherwise involves conduct that presents a serious

potential risk of physical injury to another."

The Supreme Court has interpreted the residual provision to encompass

some attempt offenses. *See James v. United States*, 550 U.S. 192 (2007). In

*James* it considered whether "attempted burglary, as defined by Florida law, is a

'violent felony.'" *Id.* at 195. Although Florida's criminal code defines the

conduct required for an attempt as "'any act toward the commission of [the]

offense,'" *id.* at 197 (quoting Fla. Stat. § 777.04(1) (2003)), the state supreme

court has "considerably narrowed [the statute's] application in the context of

attempted burglary," *id.* at 202. It "requir[es] an overt act directed toward entering or remaining in a structure or conveyance. Mere preparation is not enough." *Id.* (citation and internal quotation marks omitted). Moreover, "Florida's lower courts appear to have consistently applied this heightened standard." *Id.* at 202–03.

*James* analyzed whether attempted burglary as so defined is "'conduct that presents a serious potential risk of physical injury to another.'" *Id.* at 203 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). Recognizing "[t]he specific offenses enumerated in clause (ii) [as] one baseline from which to measure whether other similar conduct" satisfies the residual provision, the Court compared "the risk posed by attempted burglary . . . to that posed by its closest analog among the enumerated offenses— . . . completed burglary." *Id.* The "main risk of burglary," it said, "arises not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress." *Id.* Attempted burglary—which in Florida requires an overt act directed toward entry—"poses the same kind of risk" because "[i]nterrupting an intruder at the doorstep while the would-be burglar is attempting a break-in creates a risk of violent confrontation comparable to that posed by finding him inside the structure itself." *Id.* at 203–04. The Court concluded that Florida's attempted-burglary offense falls within § 924(e)(2)(B)(ii)'s residual provision and is a violent felony. *See id.* at 209.

*James*, however, resolved the violent-felony issue only for attempted-burglary laws that require overt acts directed toward entry. It left unanswered whether "more attenuated conduct . . . presents a potential risk of serious injury under [the] ACCA." *Id.* at 206.

But in this circuit we have a clarifying precedent, *United States v. Fell*, 511 F.3d 1035 (10th Cir. 2007). *Fell* considered whether the Colorado offense of conspiracy to commit second-degree burglary is a violent felony under the ACCA. *See id.* at 1037. That offense is simply an agreement to commit such a burglary, although one cannot be convicted of the offense absent an overt act by a conspirator in pursuit of the conspiracy. *See id.* at 1040. Because in Colorado a conspiracy to commit burglary does not require an act directed toward entry of a building, we were confronted with the "very question the Supreme Court deemed unnecessary to resolve in *James*, *i.e.*, whether a conviction for an inchoate crime encompassing preparatory conduct is a violent felony." *Id.* at 1041.

We concluded that it is not. Using the *James* framework, we examined whether conspiracy to commit burglary presents a risk of physical harm comparable to that of completed burglary. *See id.* at 1042. Although conspiracy may "increase . . . the theoretical possibility" that a burglary will occur, we emphasized that this possibility does not translate into a risk of physical harm. *Id.* at 1043. We explained:

Unlike the situation presented in *James*, where Florida's overt act requirement is never satisfied unless the would-be burglar is actually present at the targeted building and attempting to enter it, we can only speculate at the likelihood that a conspirator involved in an ordinary Colorado case of conspiracy to commit second degree burglary will ultimately travel to the targeted building to complete the substantive crime of burglary. Accordingly, we cannot determine with any degree of certainty that it is probable a conspirator will actually attempt to enter the building. Yet, if the conspirator is not at the building or in the vicinity, the potential risk of physical injury to others is nearly nonexistent.

*Id.* Nor does the overt-act requirement change the calculus:

[T]he [overt] act need not be directed toward the entry of a building or structure. Once an agreement to burglarize a property is reached, overt acts in furtherance of the collective objective will typically include attenuated conduct such as purchasing tools and supplies, arranging transportation to and from the building, and obtaining plans or maps. Usually such acts can be committed a considerable distance from the targeted property and ordinarily without raising any suspicions on the part of third parties. Thus, many overt acts sufficient to sustain a Colorado conspiracy conviction create no risk of a violent confrontation between the defendant and an individual interacting with the conspirator while the overt act is being committed.

*Id.* at 1044.

*Fell* therefore held that the Colorado offense of conspiracy to burglarize is not a violent felony under the ACCA. *See id.*; *see also United States v. Strahl*, 958 F.2d 980, 985–86 (10th Cir. 1992) (Utah attempted burglary is not a violent felony under the residual provision of 18 U.S.C. § 924(e)(2)(B)(ii); although Utah attempt statute requires a substantial step toward commission of the offense, the step can be preparatory, such as making a duplicate key or casing the building);

*United States v. Permenter*, 969 F.2d 911, 912–13, 915 (10th Cir. 1992) (same for Oklahoma offense of attempted burglary; Oklahoma attempt statute requires only an act toward commission of the offense).  Although *Fell* involved a conspiracy offense, its rationale applies to attempted burglaries.  If one can commit the offense of attempted burglary in many ways without an act directed toward entry of the building, the risk of physical injury to another is too speculative to satisfy the residual provision of 18 U.S.C. § 924(e)(2)(B)(ii).

We recognize that our opinion in *Fell* predates the Supreme Court decision in *Begay v. United States*, 128 S. Ct. 1581 (2008), which also addresses the residual provision of § 924(e)(2)(B)(ii).  But we see nothing in *Begay* that would call into question the analysis in *Fell*.  *Begay* said that the residual provision should cover only "crimes that are roughly similar, in kind as well as in degree of risk posed," to the crimes enumerated earlier in clause (ii).  *Id.* at 1585.  *Begay* held that the New Mexico offense of driving under the influence of alcohol was not similar "in kind" to the enumerated offenses.  *See id.* at 1586.  *James*, however, dealt with similarity to "degree of risk posed."  *See id.* at 1585.  In other words, the two opinions address distinct components of the Court's two-part test for determining whether an offense satisfies the residual provision of clause (ii).

We now turn to Arizona law.  Mr. Martinez was convicted in Arizona of attempted second-degree burglary.  Second-degree burglary is defined as "entering or remaining unlawfully in or on a residential structure with the intent

-8-

to commit any theft or any felony therein." Ariz. Rev. Stat. § 13-1507(A) (1981). The relevant portion of Arizona's attempt statute provides:

>  A person commits attempt if, acting with the kind of culpability otherwise required for commission of an offense, such person . . . [i]ntentionally does or omits to do anything which, under the circumstances as such person believes them to be, is *any step* in a course of conduct planned to culminate in commission of an offense.

*Id.* § 13-1001(A)(2) (1978) (emphasis added).

The government likens the Arizona offense of attempted burglary to Florida's attempt law. Although acknowledging that § 13-1001(A)(2) punishes "'any step'" toward commission of an offense, Aplee. Br. at 10 (quoting § 13-1001(A)(2)), the government contends that Arizona's attempt law "functionally requires a substantial step toward committing the crime and does not criminalize merely preparatory conduct," *id.* at 17. Thus, it concludes, "conduct in the ordinary case of an attempted second-degree burglary in Arizona presents a serious potential risk of injury to another" and, under *James*, qualifies as a violent felony. *Id.* (emphasis omitted).

We disagree. We are not persuaded that the Arizona courts have confined the scope of attempted burglary as much as the Florida courts have. We first address the government's claim that Arizona has construed the "any step" requirement to mean that the offender must take a "substantial" step toward commission of the crime.

To be sure, some decisions of the Arizona Court of Appeals have construed the attempt statute to require a substantial step. *See State v. Fristoe*, 658 P.2d 825, 830 (Ariz. Ct. App. 1982) (affirming conviction of attempt to engage in oral sexual contact with minors, but saying that "the legislature merely intended to simplify the language of . . . § 13-1001(A)(2) by using 'any step' as opposed to 'substantial step.'"); *State v. Johnson*, 111 P.3d 1038, 1040 (Ariz. Ct. App. 2005) (citing *Fristoe* for proposition that "any step" means "substantial step," and affirming conviction for attempted sexual assault). *See also United States v. Taylor*, 529 F.3d 1232, 1238 (9th Cir. 2008) (following *Fristoe* and *Johnson* in construing Arizona attempt statute).

But other cases have required merely "'any step,'" *State v. Carlisle*, 8 P.3d 391, 395 (Ariz. Ct. App. 2000) (quoting § 13-1001(A)(2)) (attempted sexual conduct with a minor), or "'an overt act towards . . . commission [of the offense],'" *State v. Leyvas*, 211 P.3d 1165, 1175 (Ariz. Ct. App. 2009) (quoting *State v. Clark*, 693 P.2d 987, 989 (Ariz. Ct. App. 1984)) (attempted armed robbery); *see State v. Cleere*, 138 P.3d 1181, 1184 (Ariz. Ct. App. 2006) (describing the required conduct both as "some overt act" and "any step" (internal quotation marks omitted)). *Cleere* is particularly instructive. The court, citing § 13-1001(A)(2), said, "[O]ne could commit attempted murder by taking a step far short of inflicting or even threatening serious physical injury." 138 P.3d at 1184. It also cited for support the opinion in *State v. Mandel*, 278 P.2d 413 (Ariz.

-10-

1954), decided before the current attempt statute was enacted, which affirmed a conviction of attempted murder even though the hit man hired by the defendant had gone to the police and the target was not harmed. *See id.* And a recent unpublished opinion of the Arizona Court of Appeals said that "in the years following the adoption of § 13-1001, our courts repeatedly have stated that the crime of attempt merely requires a person to take 'any step,' not a substantial step, toward the commission of a crime." *State v. Garcia*, No. 2 CA-CR 2008-0020, 2009 WL 104639, at \*3 (Ariz. Ct. App. Jan. 15, 2009) (unpublished).

Most importantly, the Arizona Supreme Court has never used the substantial-step formulation in applying § 13-1001(A)(2). *See Mejak v. Granville*, 136 P.3d 874, 878 (Ariz. 2006) (en banc) ("Attempt requires only that the defendant intend to engage in illegal conduct and that he take *a step* to further that conduct." (emphasis added)); *State v. Van Adams*, 984 P.2d 16, 28 (Ariz. 1999) (en banc) (an attempt occurs "when a person intentionally takes steps intended to 'culminate in the commission of an offense.'" (quoting § 13-1001(A)(2)); *State v. Williams*, 904 P.2d 437, 451 (Ariz. 1995) (en banc) (a person commits an attempt if, with the requisite culpability, he "intentionally does or omits to do anything which is *any step* in a course of conduct planned to culminate in commission of an offense." (emphasis added)).

Moreover, even if the Arizona attempt statute requires a substantial step, it would still prohibit attenuated conduct, and attempted burglary would therefore

still be disqualified from being a violent felony under *Fell*. One can take a substantial step toward committing a crime without being on the verge of committing it. For example, in *Fristoe*, which said that an attempt required a substantial step, the Arizona Court of Appeals upheld a conviction for attempted oral sexual contact with minors when the defendant's conduct consisted of driving up to the young girls and offering them money in exchange for sexual contact. *See* 658 P.2d at 830–31. We would assume that Arizona courts would interpret "substantial step" as it is described in the attempt provision of the Model Penal Code (MPC). *See* MPC § 5.01(1)(c) (a person commits attempt if, with the requisite intent, he takes "a substantial step in a course of conduct planned to culminate in his commission of the crime."). The MPC sets forth examples of conduct that may constitute a substantial step, including "reconnoitering the place contemplated for the commission of the crime." *Id.* § 5.01(2)(c). The MPC comment addressing this example states: "The rationale . . . is that firmness of purpose is shown when the actor proceeds to scout the scene of the contemplated crime in order to detect possible dangers and to fix on the most promising avenue of approach." *Id.* § 5.01, cmt. n.6(b)(iii), at 337. Such reconnoitering, which may be conducted hours, or even days, before the planned burglary, would not constitute attempted burglary under Florida law (as understood in *James*) and does not present risks of physical harm comparable to that of completed burglary. *See Fell*, 511 F.3d at 1043; *Permenter*, 969 F.2d at 913 (when conduct such as

-12-

"'casing' the targeted structure"—that is, reconnoitering—can sustain an attempted-burglary conviction, the attempt offense is not a violent felony under the ACCA).

Our interpretation of the Arizona attempt statute is not altered by the language in *State v. Dale*, 590 P.2d 1379, 1380 (Ariz. 1979) (en banc), that an attempt requires action "beyond the stage of mere preparation." *Dale*, although handed down after enactment of the present version of § 13-1001, applied the prior version because the alleged offense occurred on August 6, 1977, preceding the new statute's effective date. *See id.* No Arizona Supreme Court opinion applying the present statute has repeated the "mere preparation" language.

Accordingly, we do not read Arizona's attempt law as congruent with Florida's attempt law. Indeed, the government has not shown that in Arizona the offense of attempted burglary is narrower than the same offenses in Utah and Oklahoma, which were found not to be violent felonies in *Strahl* (Utah) and *Permenter* (Oklahoma). Although the analysis in *Strahl* and *Permenter* may be questioned because the opinions preceded *James*, our opinion in *Fell* makes clear that their holdings survived *James*. Far from suggesting that the overt act required for the Colorado crime of conspiracy to commit burglary could be more attenuated than the acts required to commit attempted burglary in Utah or Oklahoma, *Fell* analogized the acts governed by those statutes. We wrote:

-13-

[T]here is no basis upon which this court can conclude the overt act requirement necessary to sustain a Colorado conspiracy conviction is analogous to the Florida overt act requirement analyzed in *James*. Under Colorado law, a jury can convict a defendant of conspiracy to commit second degree burglary without proof that a conspirator committed an act directed toward the entry of the building or structure. Accordingly, the Colorado conspiracy statute is analogous to the Utah and Oklahoma attempt statutes we analyzed in *Strahl* and *Permenter*, where we concluded the statutes permitted criminal convictions if a jury finds a defendant engaged in mere preparatory conduct "'with the kind of culpability otherwise required' for the commission of a burglary." *Strahl*, 958 F.2d at 986 ("[A]n attempted burglary conviction may be based upon conduct such as making a duplicate key, 'casing' the targeted building, obtaining floor plans of a structure, or possessing burglary tools.").

511 F.3d at 1041. Following *Fell*, we hold that attempted burglary under Arizona law is not a violent felony.

## B.     Sentencing Guidelines—Crime of Violence

Mr. Martinez also contends that his attempt offenses are not crimes of violence under USSG § 4B1.2(a). We review de novo the district court's interpretation of the guidelines. *See United States v. Williams*, 559 F.3d 1143, 1146 (10th Cir. 2009).

The firearms guideline assigns a defendant a base offense level of 24 if he has "two felony convictions of . . . a crime of violence." USSG § 2K2.1(a)(2). A *crime of violence* is

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 4B1.2(a); *see also id.* § 2K2.1 cmt. n.1 (cross-referencing § 4B1.2(a) for definition of *crime of violence*). This language is very similar to the ACCA language defining the term *violent felony*. And we have looked to interpretations of the ACCA to guide our reading of § 4B1.2(a). *See Williams*, 559 F.3d at 1147 n.7. But the definitions are not identical. The Sentencing Commission was not bound to use for its purposes the ACCA definition of *violent felony*. Indeed, it chose to use a different term—*crime of violence*, rather than *violent felony*.

To interpret the guideline language, we customarily look to the Sentencing Commission's commentary. *See* USSG § 1B1.7 ("The Commentary that accompanies the guideline sections . . . may interpret the guideline or explain how it is to be applied."). "[C]ommentary issued by the Sentencing Commission to interpret or explain a guideline is binding and authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline. In this context, a guideline and its commentary are inconsistent only when 'following one will result in violating the dictates of the other.'" *United States v. Morris*, 562 F.3d 1131, 1135 (10th Cir. 2009) (ellipses omitted) (quoting *Stinson v. United States*, 508 U.S. 36, 43 (1993)). Pertinent to this case, the commentary to § 4B1.2 states: "'Crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and

attempting to commit such offenses." USSG § 4B1.2 cmt. n.1. Mr. Martinez does not dispute that the commentary would require treating his two attempted-burglary offenses as crimes of violence under the guideline. Rather, he asserts that the commentary is invalid because it is inconsistent with the language of § 4B1.2 itself. We disagree.

Application note 1 to § 4B1.2 can be reconciled with the language of guideline § 4B1.2 in two reasonable ways. First, the note may be viewed as a definitional provision. It tells us that when the guideline uses the word for a specific offense, that word is referring to not just the completed offense but also "aiding and abetting" the offense, "conspiring" to commit the offense, and "attempting" to commit the offense. Rather than cluttering the guidelines with, say, "burglary, aiding and abetting burglary, conspiring to commit burglary, and attempting to commit burglary," the Sentencing Commission uses the shorthand expression "burglary." Indeed, definitions of terms used in the guidelines are commonly placed in the application notes. *See, e.g.*, *id.* § 2A4.1 cmt. nn.1–3 (defining terms used in the kidnapping guideline); *id.* § 2B1.1, cmt. n.1 (defining terms used in theft guideline); *id.* § 3A.1.1 cmt. n.2 (defining *vulnerable victim* in the hate-crime guideline). Even when the same term is used in several guideline sections, the commentary may define the term differently for a particular guideline. *See, e.g.*, *id.* § 2A4.1 cmt. n.1 (adopting narrower meaning of *serious bodily injury* for that guideline).

Second, application note 1 may reflect the Sentencing Commission's view that when an offense is a crime of violence, so is attempting the offense (as well as aiding and abetting or conspiring to commit the offense), because it presents a "serious potential risk of physical injury to another" comparable to that presented by the completed offense. *Id.* § 4B1.2(a)(2). The Supreme Court read the application note this way in *James.* It used the note to support its holding (that the Florida offense of attempted burglary is a violent felony), saying:

> The United States Sentencing Commission has come to a similar conclusion with regard to the Sentencing Guidelines' career offender enhancement, whose definition of a predicate "crime of violence" closely tracks ACCA's definition of "violent felony." The Commission has determined that "crimes of violence" for the purpose of the Guidelines enhancement "include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." § 4B1.2, comment., n. 1. This judgment was based on the Commission's review of empirical sentencing data and presumably reflects an assessment that attempt crimes often pose a similar risk of injury as completed offenses. As then-Chief Judge Breyer explained, "the Commission, which collects detailed sentencing data on virtually every federal criminal case, is better able than any individual court to make an informed judgment about the relation between" a particular offense and "the likelihood of accompanying violence." *United States v. Doe*, 960 F.2d 221, 225 (C.A.1 1992).

*James*, 550 U.S. at 206 (citation and brackets omitted). Because the inclusion of attempt offenses as crimes of violence depends on empirical data, it is hard to see how the application note's inclusion of attempts could be inconsistent with the guideline language. Inclusion may be "wrong" as a factual matter (if attempts do not actually present risks comparable to those created by completed offenses).

-17-

But it is not the guideline language in itself that dictates a result different from what the application note prescribes. *See Morris*, 562 F.3d at 1135 ("[A] guideline and its commentary are inconsistent only when following one will result in violating the dictates of the other." (internal quotation marks omitted)). We cannot invalidate an application note merely because our view of empirical data differs from that of the Sentencing Commission.

For the above reasons, we hold that Arizona attempted burglary is a crime of violence under the Sentencing Guidelines.

## III.   CONCLUSION

We AFFIRM the district court's ruling that Mr. Martinez's attempted-burglary offenses are crimes of violence but REVERSE its ruling that the offenses are violent felonies. We therefore REMAND for re-sentencing. We GRANT Mr. Martinez's unopposed motion to take judicial notice.