WOOD, Circuit Judge,
dissenting.
The only point that Anthony Raupp has raised on this appeal is whether the district court, in applying U.S.S.G. § 2K2.1(a)(2), correctly added two offense levels under the U.S. Sentencing Guidelines on the ground that Raupp had two previous convictions for crimes of violence. That guideline stipulates that the meaning of the term “crime of violence” for purposes here is the same as that found in § 4B 1.2(a) and Application Note 1 of the Commentary to § 4B1.2. The question before us concerns what that definition properly covers and whether it includes Raupp’s prior state conviction for conspiracy to commit robbery. My colleagues conclude that the Sentencing Guidelines in this instance have adopted a significantly broader definition than the one used in the Armed Career Criminal Act (“ACCA”), 18 U.S.C. § 924(e)(2)(B). With respect, I do not agree with them. Their holding is inconsistent with a long line of cases holding that the text of § 4B1.2 and the nearly identical text in the ACCA have the same meaning. Although there would be no problem if the commentary to the Guidelines on which my colleagues rely were merely explaining concepts within the boundaries established by the Guidelines themselves, there is a problem when the commentary strays outside those boundaries altogether. I am persuaded by Raupp’s argument, and I would therefore vacate his sentence and remand for resentencing.
Raupp pleaded guilty to being a felon in possession of a firearm, made criminal by 18 U.S.C. § 922(g)(1). As part of the required calculation of his advisory guidelines sentence, the district court considered whether he had two previous convictions for crimes of violence, which would add two offense levels to the guidelines calculation. U.S.S.G. § 2K2.1(a)(2). Raupp concedes that he has one, but he does not have two unless the conspiracy conviction counts. And so the question becomes whether that offense meets the definition set forth in the Guidelines. To answer that, the application notes to § 2K2.1 direct us to turn to the definition of “crime of violence” in § 4B1.2 (which also applies to sentencing under the career-offender provisions of § 4B1.1).
Section 4B1.2(a) defines the term “crime of violence” as follows:
... any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
The language of the ACCA does not track that definition perfectly, but it comes close. After stating that a person who violates § 922(g) and who has three previous convictions “for a violent felony or a serious drug offense” gets an enhanced sentence, the ACCA defines the term “violent felony” as follows:
... any crime punishable by imprisonment for a term exceeding one year [or certain juvenile dispositions not at issue here], that—
(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
*762 (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another----
18 U.S.C. § 924(e)(2)(B). The only differences between these definitions are (1) the use of the term “crime of violence” versus the term “violent felony”; (2) the addition of the phrase “of a dwelling” after the word “burglary”; and (3) the addition of the word “the” before the word “use” in subpart two. To say that these are inconsequential differences (with the possible exception of the mention of a dwelling, see United States v. Wenner, 351 F.3d 969, 973 n. 2 (9th Cir.2003), but that is not at issue here) is to flatter them. In all respects relevant to this case, the two provisions are essentially identical.
So far, so good. This court has regularly respected the substantive identity of these two provisions. See, e.g., United States v. Scanlan, 667 F.3d 896, 898 (7th Cir.2012); Narvaez v. United States, 641 F.3d 877, 879 (7th Cir.2011); United States v. Woods, 576 F.3d 400, 403-04 (7th Cir.2009) (applying the Supreme Court’s decision in Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), an ACCA case, to § 4B1.2; the dissenters disagreed only with respect to how Begay should be applied, not whether it should be); United States v. Templeton, 543 F.3d 378, 380 (7th Cir.2008) (“It would be inappropriate to treat identical texts differently just because of a different caption.”).
Raupp argues here that the inchoate crime of which he was convicted — conspiring to commit robbery in violation of Ind. Code § 35-42-5-2 — is not (1) a crime that has physical force as an element; (2) a crime listed in the Guideline; nor (3) does it involve conduct “that presents a serious potential risk of physical injury to another” (the so-called “residual clause”). Raupp’s first two points are indisputable. Unlike the inchoate crime of attempted robbery, which requires a substantial step toward the completed crime, Indiana’s crime of conspiracy may involve only nefarious conversations. Henderson v. State, 769 N.E.2d 172, 177 (Ind.2002); see also Coleman v. State, 952 N.E.2d 377, 382 (Ind.App.Ct.2011) (“[T]he agreement itself constitutes the criminal act.”). Using the modified categorical approach that governs these cases, Raupp’s crime was indivisible and so it does not matter how he actually carried out his conspiracy. See Woods, 576 F.3d at 405-06. Conspiracy cannot be used as a predicate for his guidelines calculation, then, unless it falls within the “residual clause.”
But the majority has concluded that it does not need to address the question whether conspiracy “presents a serious potential risk of physical injury to another.” Instead, it plays a trump card against Raupp that comes from the commentary to § 4B1.2. Application Note 1, paragraph 1, says that “‘[cjrime of violence’ and ‘controlled substance offense’ include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.” If the Sentencing Commission is entitled to broaden the Guideline so that it applies to non-violent crimes such as the version of conspiracy that Indiana has adopted, then my colleagues are correct that this language cheeks Raupp’s argument. In order to reach that result, they assume that the treatment of inchoate offenses is left open by § 4B1.2, and that all the Commission has done in the Application Note is to fill in a blank. In my view, however, the inclusion of all conspiracy offenses is inconsistent with the language of the Guideline, and thus the expansion implicit in the Application Note is incorrect under established principles of administrative law.
*763 I begin with James v. United States, 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007), since it is the only Supreme Court decision to discuss inchoate offenses. There the Court held that Florida’s attempted burglary offense was properly viewed as a “violent felony” under the ACCA. The attempt offense at issue required that the burglar take “an overt act directed toward entering or remaining in a structure,” id. at 206, 127 S.Ct. 1586, and this, the Court found, “creat[ed] a risk of violent confrontation comparable to that posed by finding him inside the structure itself,” id. at 203-04, 127 S.Ct. 1586. The holding in James left untouched different statutes that do not require a similar substantial step toward the completion of the crime, such as those at issue in United States v. Strahl, 958 F.2d 980, 986 (10th Cir.1992), United States v. Martinez, 954 F.2d 1050, 1054 (5th Cir.1992), and United States v. Weekley, 24 F.3d 1125 (9th Cir.1994). See also United States v. Martinez, 602 F.3d 1166, 1171-72 (10th Cir.2010) (concluding that Arizona’s attempted burglary statute is not a violent felony and distinguishing James).
This is consistent with the approach to the ACCA taken in Sykes v. United States, — U.S.-, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011), where the Court stressed that risk of violence is the dispositive factor for the residual clause. Id. at 2275. In so holding, it reinforced what it already had said in James: “We conclude that nothing in the plain language of clause (ii), when read together with the rest of the statute, prohibits attempt offenses from qualifying as ACCA predicates when they involve conduct that presents a serious potential risk of physical injury to another.” 550 U.S. at 198, 127 S.Ct. 1586 (emphasis added). The Court’s caution is most sensibly read as an acknowledgment that some inchoate offenses will create the necessary “serious potential risk of physical injury to another” and others will not. Conspiracy offenses are often a further step away from any physical dimension, as the majority recognizes. Ante at 757-58 (conviction for conspiracy may not require proof of an overt act, or the overt act might be satisfied by peaceable steps). We must take care not to conflate the analysis of attempt offenses, which in Indiana require a “substantial step” toward completion of the robbery, with the analysis of conspiracy offenses, which do not in that state. Calvert v. State, 930 N.E.2d 633, 640 (Ind.App.Ct.2010). Indeed, Indiana courts have stressed that a conviction for conspiracy “does not require proof that the defendant or a cohort actually committed or even attempted to commit the underlying crime.” Coleman, 952 N.E.2d at 382. And the Indiana legislature has declined to treat the crime of conspiracy as a crime of violence under state law. See id. at 383 (“The legislature reasonably may have concluded that because conspiracies do not necessarily result in actual harm to a victim, and often require less proof of detrimental conduct in order to convict a defendant than as to the completed crime, it would not include conspiracies to commit a ‘crime of violence’ within the definition of ‘crime of violence.’ ”).
The majority postulates that the Sentencing Commission might have chosen to include inchoate offenses in the text of § 4B1.2 itself. I agree with them that there was nothing forcing the Commission to use the same language as that found in the ACCA, and I also agree that Raupp’s argument would have no merit if the Commission had written a Guideline that expressly included all inchoate offenses. But, to state the obvious, that is not what the Commission did. Instead, it elected to promulgate a Guideline that mimics the ACCA and then to “interpret” that Guide *764 line expansively in the Application Note. That is where it went astray.
Application Notes in the commentary to the Sentencing Guidelines should “be treated as an agency’s interpretation of its own legislative rule.” Stinson v. United States, 508 U.S. 36, 44, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). And, “provided an agency’s interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given ‘controlling weight unless it is plainly erroneous or inconsistent with the regulation.’ ” Id. at 45, 113 S.Ct. 1913 (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)). This type of deference today is most commonly referred to as “Auer deference,” alluding to the leading case of Auer v. Robbins, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). The majority acknowledges Auer and Stinson, but it fails adequately to consider whether “the guideline which the commentary interprets will bear the. construction.” Stinson, 508 U.S. at 46, 113 S.Ct. 1913.
In order to assess the scope of the Guideline properly, we must take into account the fact that its language is identical to, and in fact came directly from, a statute passed by Congress. The definition found in the ACCA was put in place in 1986. See 18 U.S.C. § 924(e)(2)(B). The current language in § 4B1.2 of the Guidelines was adopted by the Sentencing Commission in its 1989 amendments, with the explanation that “[t]he definition of crime of violence used in this amendment is derived from 18 U.S.C. § 924(e).” It is therefore fitting for courts, as ours consistently has done until now, to look to ACCA case law to understand the corresponding language in the Guidelines. See, e.g., United States v. Lockley, 632 F.3d 1238, 1243 n. 5 (11th Cir.2011) (“Though ACCA’s ‘violent felony’ enhancement ’ and the Guidelines’ career offender enhancement differ slightly in their wording, we apply the same analysis to both.”); United States v. Archer, 531 F.3d 1347 (11th Cir.2008) (applying the analysis of ACCA cases to conclude that carrying a concealed weapon is not a crime of violence under the Guidelines, after the Supreme Court granted certiorari in Archer and then remanded in light of its ACCA decision in Begay). The majority dismisses the relevance of the ACCA decisions because they concern the statute; they do not concern any Guideline. Ante at 758. I reject this effort to create a new division unjustified by either the text of the two provisions or by the agency’s own rationale for choosing to adopt the statutory language as its own.
When an agency borrows language that originated with Congress, we should not ignore the meaning of the congressional language when we evaluate the agency’s interpretation of its rules. For example, in United Fire Ins. v. C.I.R., this court found that deference to the IRS’s interpretation of its own regulation was not justified. 768 F.2d 164, 169 (7th Cir.1985) (“We ordinarily accord great deference to an agency’s interpretation of its own regulations. But even so, we need not follow the agency’s interpretation when there are compelling indications that it is wrong.”). In that case, we noted that “the grounds for deference are diminished by the fact that the language of the regulations in question did not originate with the Commissioner but was taken almost verbatim from the Senate Report on the Revenue Act of 1942.” Id. Because the regulatory language originated in a congressional report, we took the position that “our inquiry is really into the intent of Congress,” id., and that the evidence of congressional intent did not support the interpretation held by the Commissioner.
*765 Often, perhaps even usually, when courts apply Auer deference, they conclude that an agency’s interpretation of its own regulation is permissible. See, e.g., Chase Bank USA, N.A. v. McCoy, — U.S. -, 131 S.Ct. 871, 881-82, 178 L.Ed.2d 716 (2011) (applying Auer deference to the Federal Reserve Board’s interpretation of its regulation); United States v. Larionoff, 431 U.S. 864, 872-73, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977) (deferring to Navy’s interpretation of Department of Defense regulations because they were “not plainly inconsistent with the wording of the regulations”). But “usually” is not “always,” and so it is not hard to find cases when a court has found that an agency’s interpretation goes beyond the bounds of the regulation, even when the agency’s language did not originate with Congress. See, e.g., Pettibone Corp. v. United States, 34 F.3d 536, 541 (7th Cir.1994) (refusing to defer to IRS’s interpretation of its own regulation and emphasizing that an agency’s power to interpret its regulations “must not be confused with a power to rewrite”); Public Citizen, Inc. v. Mineta, 343 F.3d 1159, 1166 (9th Cir.2003) (refusing to defer to the National Highway Traffic Safety Administration’s understanding of when one of its rules was issued); Municipal Resale Serv. Customers v. FERC, 43 F.3d 1046, 1053 (6th Cir.1995) (refusing to defer to the Federal Energy Regulatory Commission’s interpretation of one of its regulations).
The majority believes that the Tenth Circuit’s Martinez decision, supra, 602 F.3d 1166, which held that attempted robbery is a crime of violence under the Guidelines even though it is not under the ACCA, supports its result. But Martinez ’s holding is premised on an idea that this court has decisively rejected and that even the majority does not endorse: that courts should treat the ACCA and Guidelines language differently because the Sentencing Commission “chose to use a different term — crime of violence, rather than violent felony ” — in its caption. Id. at 1173 (emphasis in original). Martinez actually highlights the inconsistency of this approach: the Tenth Circuit found that under the ACCA, attempted robbery does not “present[] a serious potential risk of physical injury to another,” James, 550 U.S. at 198, 127 S.Ct. 1586, but when that same definition is copied into the Guidelines, somehow attempted robbery does present a serious enough risk. Those two conclusions, drawn from the identical text, are inconsistent. Nothing in the different captions affects the proper way to assess risk. The distinction that Martinez tries to draw is unconvincing in the opinion, and is equally unconvincing as an agency interpretation.
Indeed, there are signs on the horizon that the Supreme Court may be about to revisit Auer and endorse a more skeptical review of agency interpretations of their own regulations. The Court has before it the case of Christopher v. SmithKline Beecham Corp., 635 F.3d 383 (9th Cir.), cert. granted, — U.S.-, 132 S.Ct. 760, 181 L.Ed.2d 480 (2011). The first question presented in Christopher is “[wjhether deference is owed to the Secretary [of Laborj’s interpretation of the Fair Labor Standards Act’s outside sales exemption and related regulations.” This case arises against the backdrop of criticism of the Auer rule from Justices Scalia and Thomas. In Talk America, Inc. v. Michigan Bell Tel. Co., — U.S. --, 131 S.Ct. 2254, 180 L.Ed.2d 96 (2011), Justice Scalia wrote in a concurring opinion that “deferring to an agency’s interpretation of its own rule encourages the agency to enact vague rules which give it the power, in future adjudications, to do what it pleases.... We have not been asked to reconsider Auer in the present case. When we are, I will be receptive to doing so.” Id. at 2266; *766 see also Thomas Jefferson University v. Shalala, 512 U.S. 504, 524-25, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (Thomas, J., dissenting and criticizing the application of Auer/Bowles deference); John F. Manning, Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules, 96 Colum. L.Rev. 612, 615 (1996). All of this said, I recognize that formal changes to Auer lie down the road, if they take place at all. My view rests squarely on the law as it currently stands. I take note of Christopher only to make the point that it cannot weaken, and may strengthen, the points I am making here.
This debate between an agency’s adoption of formal regulations (or, as here, the Guidelines) and its interpretations of those regulations is not an exercise in empty formality. There is a significant difference between the procedures that the Sentencing Commission uses when it promulgates the Guidelines and those that it uses when it writes commentary or policy statements. See 28 U.S.C. § 994(p); USSC Rules of Practice and Procedure 2-3 (2007), available at http://www.ussc.gov/Meetings_and_ Rulemaking/Practice_Procedure_Rules. pdf. Proposed Guidelines or changes to Guidelines must be submitted to Congress no later than May 1 of a calendar year, where they must sit for 180 days to give Congress an opportunity to modify or disapprove them. In contrast, “[ajmendments to policy statements and commentary may be promulgated and put into effect at any time.” Id. at 3 (Rule 4.1). The Commission must comply with the notice and comment rules in section 553 of the Administrative Procedures Act when promulgating Guidelines, but it is under no such obligation when promulgating commentary and policy statements. Id. (Rule 4.3). This calls to mind the distinction that the Supreme Court has drawn between Chevron deference (owed to regulations issued under formal notice-and-eomment procedures) and Mead/Skidmore consideration for things like interpretations contained in policy statements, agency manuals, and enforcement guidelines. See United States v. Mead, 533 U.S. 218, 234, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).
When an agency like the Sentencing Commission uses a regulation as a springboard for an “interpretation” that goes beyond the boundaries of the original regulation, Auer and Stinson tell us that it has gone too far. That is exactly what the Sentencing Commission did here, when it decided that the phrase “presents a serious potential risk of physical injury to another” could be stretched to include Indiana’s inchoate offense of conspiracy to commit robbery. In my opinion, it cannot, and so I would find that Raupp is entitled to be resentenced. I therefore respectfully dissent.