FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

February 12, 2024

Christopher M. Wolpert
Clerk of Court

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RUSSELL FOREMAN,

    Defendant-Appellant.

No. 22-1255
(D.C. No. 1:21-CR-00165-RM-1)
(D. Colo)

---

**ORDER AND JUDGMENT**[*]

---

Before **EID**, **SEYMOUR**, and **KELLY**, Circuit Judges.

---

Russell Foreman was sentenced to sixty-six months' incarceration for fraudulently

obtaining COVID-19 pandemic relief funds. He asserts his sentence was improperly

enhanced by the district court when it applied a 14-level increase to his base offense level.

Specifically, Foreman argues the word "loss" in Sentencing Guideline § 2B1.1(b) plainly,

and only, means "actual loss." He thus argues the court was precluded under *Kisor v.*

*Wilkie*, 139 S. Ct. 2400 (2019), from relying on commentary to § 2B1.1(b) defining "loss"

as "the greater of actual loss *or intended loss*." Foreman's argument is foreclosed by our

---

[*]After examining the briefs and appellate record, this panel has decided unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 343(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

recent decision in *United States v. Maloid*, 71 F.4th 795 (10th Cir. 2023). Therefore, we affirm.

## Background

Between March and October 2020, Foreman submitted nine fraudulent loan applications to the Small Business Administration to obtain COVID-19 pandemic relief funds authorized under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. Some, but not all, of Foreman's fraudulent applications bore illicit fruit, to the taste of $367,552.00. Foreman was indicted for wire fraud in violation of 18 U.S.C. § 1343, money laundering in violation of 18 U.S.C. § 1957, conspiracy in violation of 18 U.S.C. § 371, and aiding and abetting in violation of 18 U.S.C. § 2. He ultimately pleaded guilty to wire fraud and money laundering.

At sentencing, the key issue was the government's amount of "loss." This amount was necessary to calculate Foreman's base offense level under United States Sentencing Guidelines ("U.S.S.G") § 2B1.1(b)(1). Both parties agree that Foreman fraudulently received $367,552.00. Both also agree that Foreman unsuccessfully attempted to receive at least an additional $220,000.00. The parties further agreed when calculating Foreman's base offense level that a 12-level increase applied because the loss to the government—the $367,552.00 that Foreman received—was between $250,000.00 and $550,000.00. *See* § 2B1.1(b)(1)(H).

On this last point, the district court disagreed. It observed that § 2B1.1's commentary defined "loss" as "the greater of actual loss *or intended loss*." § 2B1.1 cmt.

n.3(A) (emphasis added). Because Foreman submitted unsuccessful applications for at least another $220,000.00, the court found that he had intended losses to the government of $587,552.00. Under § 2B1.1, this corresponded to a higher 14-level increase.[1] Foreman objected to the court's reliance on commentary note 3(A)'s definition of "loss," arguing principally that because "loss" in the guideline was unambiguous, the Supreme Court's ruling in *Kisor* made deference to the commentary impermissible. The district court overruled this objection and, considering the 14-level increase, imposed a sixty-six month sentence. Foreman timely appealed.

## Discussion

Foreman argues that the district court erred when it determined his offense level using § 2B1.1's commentary because he asserts that post-*Kisor* a court may only consider such commentary if a guideline is "genuinely ambiguous." He further argues that because the word "loss" in § 2B1.1 unambiguously means *actual* losses—not *intended* losses—the court should not have deferred to the comment incorporating intended loss into § 2B1.1. "We review the district court's sentencing decision for an abuse of discretion." *United States v. Jones*, 15 F.4th 1288, 1291 (10th Cir. 2021). The district court's legal conclusions we review de novo. *Id.*

Foreman's argument below and on appeal hinges on a singular issue: whether, in the context of the Sentencing Guidelines' commentary, the Supreme Court in *Kisor* abrogated

---

[1] The difference between the 12- and 14-level enhancements increased Foreman's guideline range from 51–63 months to 63–78 months.

3

its prior holding in *Stinson v. United States*, 508 U.S. 36 (1993). As Foreman now

acknowledges in his reply, our recent decision in *Maloid* held that *Kisor* did not abrogate

*Stinson* and, as such, his appeal is foreclosed.

We begin with the guideline and the associated comment at issue. The guideline

under which Foreman's sentencing range was calculated was U.S.S.G. § 2B1.1, for fraud-

related offenses. Per that guideline, if the victim's "loss" is over $6,500, the defendant's

base offense level is enhanced via a graduating scale. § 2B1.1(b)(1). The guideline itself,

however, does not define "loss." Rather, "loss" is defined in commentary note 3 to the

guideline, which defines "loss" as the "greater of actual loss or intended loss." § 2B1.1

cmt. n.3(A).[2]

In *Stinson v. United States*, the Supreme Court addressed whether Sentencing

Guideline commentary, like commentary note 3, was enforceable. It held that commentary

to a guideline was entitled to "binding" weight so long as it "does not run afoul of the

Constitution or a federal statute, and [] is not 'plainly erroneous or inconsistent' with" the

guideline it interprets. *Stinson*, 508 U.S. at 47 (quoting *Bowles v. Seminole Rock & Sand

Co.*, 325 U.S. 410, 414 (1945)). The Court held this, in part, because "[a]lthough the

analogy is not precise," "the guidelines are the equivalent of legislative rules adopted by

---

[2] The commentary note goes on to further define "actual loss" as "the reasonably foreseeable pecuniary harm that resulted from the offense." § 2B1.1 cmt. n.3(A)(i). It defines "intended loss" as "the pecuniary harm that the defendant purposely sought to inflict; and [] includes intended pecuniary harm that would have been impossible or unlikely to occur . . . ." § 2B1.1 cmt. n.3(A)(ii).

4

federal agencies" and, as such, entitled to deference. *Id.* at 44–45. *See also Maloid*, 71 F.4th at 802. This circuit has "dutifully applied [*Stinson*'s] rule." *Maloid*, 71 F.4th at 803 (pointing to *United States v. Morris*, 562 F.3d 1131 (10th Cir. 2009), and *United States v. Martinez*, 602 F.3d 1166 (10th Cir. 2010), as examples). Here, then, under *Stinson*, we could only find error with the district court's deference to commentary note 3 if that commentary ran afoul of the Constitution or a federal statute, or was plainly erroneous or inconsistent with § 2B1.1. *See Stinson*, 508 U.S. at 47.

In the district court and on appeal, Foreman contends that analysis was outdated considering the Supreme Court's recent holding in *Kisor v. Wilkie*. In *Kisor*, the Court held that an executive agency's interpretation of its own regulations is only entitled to deference if that regulation is "genuinely ambiguous." *Kisor*, 139 S. Ct. at 2415. Because *Stinson* held that the Guidelines' "commentary is akin to an agency's interpretation of its own legislative rules," Foreman argues, *Kisor* now requires that a guideline be "genuinely ambiguous" before a court defers to a commentary interpreting a guideline. *Stinson*, 508 U.S. at 45.[3]

While Foreman's case was on appeal, we decided otherwise. In *United States v. Maloid*, we held that *Kisor* did not abrogate *Stinson* and, as such, that Guideline "Commentary governs unless it 'run[s] afoul of the Constitution or a federal statute' or is

---

[3] Assuming we agreed *Kisor*'s framework was the correct one to apply, Foreman further argues that the word "loss" in § 2B1.1(b)(1) is not "genuinely ambiguous"—that it means plainly and only actual loss—and that the district court thus committed error when it deferred to commentary note 3, which defined "loss" to include "intended loss."

'plainly erroneous or inconsistent' with the guideline provision it interprets." *Maloid*, 71

F.4th at 805 (quoting *Stinson*, 508 U.S. at 47). In *Maloid*, the district court construed

Maloid's prior conspiracy-to-menace conviction as qualifying for a "crime of violence"

enhancement. *Id.* at 798–99. The court did so by relying on the guideline's commentary,

which defined a "crime of violence" as including conspiracies. *Id.* Like Foreman, Maloid

alleged on appeal that the district court's reliance on, and enforcement of, the commentary

was improper post-*Kisor*. *See id.* at 805 ("At bottom, Maloid's argument turns on whether

we accept his premise that *Kisor* [not *Stinson*] controls how we interpret the Guidelines'

commentary.").

　　We were unconvinced. "*Kisor* had everything to say about executive agencies," we

found, but "precious little [to say] about the Sentencing Commission." *Id.* at 806. That

distinction was "critical." *Id.* Unlike the executive agencies at issue in *Kisor*, we observed

that "[t]he Commission is neither an executive agency nor strictly limited by the APA,"

and that "[i]ts governing statute, the SRA, includes the Commission in the *judicial* branch,"

not the executive. *Id.* (emphasis added). Indeed, we noted that "when the Commission

speaks, it speaks as an agent of the Judiciary to help judges properly sentence defendants."

*Id.* at 807. Those dissimilarities suggested "that *Kisor* [did not mean] for its new

standard—crafted entirely in the context of executive agencies—to reach the Commission."

*Id.* "[A]bsent clear direction from the [Supreme] Court" otherwise, we held that "*Stinson*

remains good law" in our circuit when interpreting the Guidelines. *Id.* at 798, 805.

6

*Maloid* makes the outcome of Foreman's appeal clear, as he forthrightly admits. *See United States v. Nichols*, 775 F.3d 1225, 1230 (10th Cir. 2014) ("[O]ne panel of this court cannot overrule the judgment of another panel 'absent en banc consideration . . . [or] an intervening Supreme Court decision that is contrary to or invalidates our previous analysis.'" (quoting *United States v. Brooks*, 751 F.3d 1204, 1209 (10th Cir. 2014))), *rev'd on other grounds*, 578 U.S. 104 (2016). The standard announced that *Stinson*, not *Kisor*, controls in this circuit when interpreting Guideline commentary. Therefore, Foreman's argument to the contrary is foreclosed.

Accordingly, we can reverse only if commentary note 3 runs afoul of the Constitution or a federal statute, or is plainly erroneous or inconsistent with § 2B1.1. *See Stinson*, 508 U.S. at 47. The government points us to *United States v. Crowe*, 735 F.3d 1229 (10th Cir. 2013), for the proposition that we have upheld note 3 as not erroneous or inconsistent with § 2B1.1. We agree. Indeed, *Crowe* is not our only case to do so. We have applied § 2B1.1's commentary note 3 consistently. *See, e.g.*, *United States v. Gordon*, 710 F.3d 1124, 1161 (10th Cir. 2013); *United States v. James*, 592 F.3d 1109, 1114 (10th Cir. 2010); *United States v. Masek*, 588 F.3d 1283, 1287 (10th Cir. 2009); *United States v. Orr*, 567 F.3d 610, 615–17 (10th Cir. 2009); *United States v. Baum*, 555 F.3d 1129, 1132–36 (10th Cir. 2009); *United States v. Leach*, 417 F.3d 1099, 1105–06 (10th Cir. 2005). Foreman does not squarely challenge, and we decline to revisit, our caselaw upholding § 2B1.1's commentary note 3. Accordingly, commentary note 3 does not violate *Stinson*'s standard.

**Conclusion**

Because we held that *Kisor* did not abrogate *Stinson*'s standard when analyzing the

Sentencing Commission's guideline commentary, we reverse only if we find that

commentary note 3 violates the Constitution or a federal statute, or is plainly erroneous or

inconsistent with § 2B1.1. We do not so find and, therefore, we affirm.


Entered for the Court


Stephanie K. Seymour
Circuit Judge

8