FILED
United States Court of Appeals
Tenth Circuit

December 18, 2007

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

NATHANIEL J. FELL, also known as
Romeo,

        Defendant - Appellant.

No. 06-1438

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 05-CR-158-EWN)**

---

Stephen M. Wheeler, Wheeler Law Offices, P.C., Evergreen, Colorado, for
Appellant.

James C. Murphy, Assistant United States Attorney (Troy A. Eid, United States
Attorney, with him on the briefs), Denver, Colorado, for Appellee.

---

Before **TACHA,** Chief Judge, **BRISCOE**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.  Introduction

Defendant-Appellant, Nathaniel J. Fell, entered a guilty plea to a charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  A Presentence Investigation Report ("PSR") recommended that Fell be sentenced as an armed career criminal.  *See* 18 U.S.C. § 924(e).  Fell objected to the recommendation, arguing his prior Colorado state conviction for conspiracy to commit second degree burglary is not a violent felony conviction under 18 U.S.C. § 924(e)(2)(B).  The district court concluded the Colorado conviction qualifies as a violent felony and sentenced Fell to the statutorily mandated fifteen-year term of imprisonment.  Fell appeals his sentence.  Applying the framework recently articulated by the Supreme Court in *James v. United States*, 127 S. Ct. 1586 (2007), and exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we **reverse** and **remand** for resentencing.

## II.  Background

The facts underlying Fell's crime of conviction are not disputed.  Fell was charged in a superseding indictment with two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 924(e).  Pursuant to the terms of a written plea agreement, Fell pleaded guilty to one of the counts and the Government dismissed the second count.  The plea agreement also recited the parties' recognition of Fell's three prior Colorado convictions: a 1994 conviction for menacing, a 1995 conviction for conspiracy to commit second degree

burglary, and a 1997 conviction for attempted escape. Both the Government and Fell expressed the view that Fell's 1995 conspiracy conviction did not constitute a violent felony for purposes of the application of the armed career criminal sentencing provisions set out in 18 U.S.C. § 924(e). They acknowledged, however, their position was not binding on the district court.

At the change of plea hearing, the district court specifically advised Fell there was a possibility he could be sentenced as an armed career criminal to a minimum of fifteen years' imprisonment. Fell acknowledged he understood and thereafter entered a guilty plea. The district court accepted Fell's plea and ordered a PSR prepared. Contrary to the position of the parties, the PSR recommended that all of Fell's prior Colorado convictions, including his 1995 conviction for conspiracy to commit second degree burglary, be designated violent felonies and that Fell be sentenced pursuant to 18 U.S.C. § 924(e) as an armed career criminal. Fell filed a written objection to the PSR's treatment of his conspiracy conviction and renewed his objections orally at the sentencing hearing. Relying on this court's opinion in *United States v. Brown*, 200 F.3d 700 (10th Cir. 1999), the district court determined the Colorado conspiracy conviction was a violent felony within the meaning of 18 U.S.C. § 924(e)(2)(B) and sentenced Fell to fifteen years' imprisonment, the statutory minimum.[1]  18 U.S.C. § 924(e)(1).

---

[1]Fell did not challenge the characterization of his menacing conviction or his attempted escape conviction as violent felonies.

## III. Discussion

Because Fell was convicted of violating 18 U.S.C. § 922(g), the Armed Career Criminal Act ("ACCA") mandates that he be sentenced to a fifteen-year minimum term of imprisonment if he has three prior violent felony convictions. 18 U.S.C. § 924(e)(1). Fell does not dispute that he has been previously convicted of two violent felonies. The only appellate issue he raises is whether his 1995 Colorado conviction for conspiracy to commit second degree burglary qualifies as a violent felony for purposes of the minimum mandatory sentencing provisions of the ACCA. We review this legal question de novo. *United States v. Begay*, 470 F.3d 964, 967 (10th Cir. 2006).

The ACCA defines a violent felony as,

any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that–
(I) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B). To qualify as a violent felony, Fell's Colorado conspiracy conviction must either (1) fit under § 924(e)(2)(B)(i) because it "has as an element the use, attempted use, or threatened use of physical force against" another individual; (2) be one of the four offenses specifically enumerated in § 924(e)(2)(B)(ii); or (3) fall within the residual clause of § 924(e)(2)(B)(ii)

-4-

because it involves conduct that "presents a serious potential risk of physical injury to another."

Section 18-2-201 of the Colorado Revised Statutes states:

A person commits conspiracy to commit a crime if, with the intent to promote or facilitate its commission, he agrees with another person or persons that they, or one or more of them, will engage in conduct which constitutes a crime or an attempt to commit a crime, or he agrees to aid the other person or persons in the planning or commission of a crime or of an attempt to commit such crime.

The Colorado Supreme Court has clarified that conspiracy is a specific intent crime and a conspirator must have, *inter alia*, the specific intent to commit the crime which is the object of the conspiracy. *Watkins v. People*, 655 P.2d 834, 838 (Colo. 1982). In Fell's case, that crime was second degree burglary which, at the time of his conviction, was defined by Colorado law as "knowingly break[ing] an entrance into, or enter[ing], or remain[ing] unlawfully in a building or occupied structure with intent to commit therein a crime against another person or property." Colo. Rev. Stat. § 18-4-203(1). Because Colorado law does not require proof of the use, attempted use, or threatened use of physical force to sustain a conviction for conspiracy to commit second degree burglary, Fell's prior conviction does not qualify as a violent felony pursuant to § 924(e)(2)(B)(i). Neither does it qualify under the first clause of § 924(e)(2)(B)(ii), since it does not involve the use of explosives and it is not burglary, arson, or extortion. *Cf. United States v. Strahl*, 958 F.2d 980, 986 (10th Cir. 1992) ("We cannot conclude

that Congress intended implicitly to include attempted burglary as a violent offense when it specified burglary as a violent felony under § 924(e)(2)(B)(ii).").  Consequently, Fell's conspiracy conviction can qualify as a violent felony, if at all, only pursuant to the residual clause of § 924(e)(2)(B)(ii).

This court has previously addressed whether inchoate crimes qualify as violent felonies under the residual clause of the ACCA.  In *United States v. Strahl*, the appellant challenged the district court's use of a Utah attempted burglary conviction to sentence him pursuant to the ACCA.  958 F.2d at 982-83.  The Utah burglary statute criminalized entering or unlawfully remaining in a building with the intent to commit a felony, theft, or assault.  *Id*. at 985; *see also* Utah Code Ann. § 76-6-202(1).  The Utah attempt statute required, *inter alia*, that a defendant "'engage[] in conduct constituting a substantial step toward commission of the offense.'"  *Strahl*, 958 F.2d at 985 (quoting Utah Code Ann. § 76-4-101(1) (2003)).  This court rejected the Government's argument that attempted burglary is ineluctably a violent felony because burglary is one of the crimes specifically enumerated in 18 U.S.C. § 924(e)(2)(B)(ii).  *Id*. at 986.  After examining the legislative history of the ACCA, we concluded the express inclusion of the completed crime of burglary in the statute was not also an implicit inclusion of attempted burglary.  *Id*.  Consequently, we next analyzed whether an attempted burglary conviction under Utah law was a violent felony under the residual clause of § 924(e)(2)(B)(ii).  We noted that Utah's attempt

statute permitted convictions based on preparatory conduct which, in appellant's case, could have included "making a duplicate key, 'casing' the targeted building, obtaining floor plans of a structure, or possessing burglary tools." *Id*. Concluding such conduct does "not necessarily present circumstances which create the high risk of violent confrontation inherent in a completed burglary," we held the Utah attempted burglary conviction was not a violent felony under the ACCA because Utah law criminalized conduct that is "well outside § 924(e)'s target of 'violent' felonies." *Id*.

Less than a year later, we applied the reasoning in *Strahl* to reverse a sentence imposed pursuant to the ACCA on a defendant who had previously been convicted of attempted burglary under Oklahoma law. *United States v. Permenter*, 969 F.2d 911, 915 (10th Cir. 1992). The Oklahoma attempt statute provided that "any act" directed toward the commission of the substantive crime could support an attempt conviction. *Id*. at 913. We concluded the statute, like the Utah statute at issue in *Strahl*, was overly inclusive and did not necessarily criminalize only conduct presenting a serious potential risk of physical injury to others. *Id*. Thus, the Oklahoma conviction did not qualify as a violent felony.

We next considered an appeal from a defendant sentenced under the ACCA because of a prior New Mexico conviction for conspiracy to commit armed robbery. *United States v. King*, 979 F.2d 801, 801 (10th Cir. 1992). Consistent with our decisions in *Strahl* and *Permenter*, we began our analysis by looking to

-7-

the language of the state statute pursuant to which the defendant had been previously convicted. *Id*. at 804 ("We believe these prior Tenth Circuit cases and the approach they articulate require us to look only to the elements of the conspiracy crime under New Mexico law."). Under New Mexico law, the crime of conspiracy is complete when the co-conspirators agree to commit a felony and intend to commit the felony; there is no requirement that they take any overt step in furtherance of the substantive offense. *Id*. at 802 (*citing State v. Gilbert*, 644 P.2d 1066, 1070 (N.M. 1982)) ("It is the agreement constituting the conspiracy which the statute punishes."). Because New Mexico criminal conspiracies involve only agreements to undertake felonious acts, we held they do not necessarily present a serious potential risk of physical injury to others and, thus, are not violent felonies under the ACCA. *Id*. at 804.

Our decision in *King* was distinguished several years later in *United States v. Brown*, 200 F.3d 700, 706 (10th Cir. 1999). *Brown* involved a determination of whether a federal conviction for conspiracy to commit carjacking is a crime of violence triggering the application of an enhanced penalty under 18 U.S.C. § 924(c)(1)(A). The term "crime of violence" is defined by 18 U.S.C. § 924(c)(3) as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." After first concluding the substantive crime of carjacking "is always a crime of violence," we then rejected the defendant's argument that *King*

prohibited consideration of the elements of the substantive offense when evaluating whether conspiracy to commit the substantive offense is a crime of violence. *Brown*, 200 F.3d at 706. Instead, we noted that, unlike the New Mexico conspiracy statute at issue in *King*, an overt act in furtherance of the conspiracy is an element of the federal crime of conspiracy. *Id.* Because the New Mexico statute at issue in *King* did not require an overt act, in that case we looked only to the elements of the conspiracy charge. We reasoned that the overt act requirement of the federal conspiracy statute, in contrast, "plainly invites consideration of the underlying substantive offense . . . because the overt act must be evaluated with reference to the object of the conspiracy." *Id.* Concluding "an agreement to accomplish the statutory elements of carjacking necessarily involves a substantial risk of physical force against the person or property of another," we held conspiracy to commit carjacking is a crime of violence. *Id.* Although *Brown* characterized "the definition of violent felony under § 924(e) and a crime of violence under § 924(c)" as "essentially identical," it did not reference, discuss, or distinguish either *Strahl* or *Permenter*. *Id.*

The district court relied on our analysis of § 924(c) in *Brown* to support its conclusion that Fell's Colorado conspiracy conviction is a violent felony under § 924(e)(2)(B)(ii). The court read *Brown* to stand for the proposition that conspiracy to commit any substantive offense that is a violent felony under § 924(e)(1) is itself a violent felony if an overt act in furtherance of the

substantive crime is an element of the applicable conspiracy statute. Consistent with this interpretation, the district court concluded Fell's conviction for conspiracy to commit second degree burglary is a violent felony because it categorically presents the same potential risk of physical injury to others as burglary, an enumerated violent felony and the substantive crime toward which the overt act was directed. It is unnecessary to resolve the question of whether the district court properly relied on *Brown* because the Supreme Court has recently provided the federal courts with a new framework applicable to the question of whether a prior conviction for an inchoate crime qualifies as a violent felony under the ACCA.

In *James v. United States*, the Supreme Court applied a categorical approach to the question of whether a Florida conviction for attempted burglary was a violent felony under the residual clause of the ACCA. 127 S. Ct. at 1593-94. Rejecting the method advocated by the defendant and the one this court adopted in *Strahl* and *Permenter*, the Court held the categorical approach does not "require[] that every conceivable factual offense covered by a statute must *necessarily* present a serious potential risk of injury before the offense can be deemed a violent felony." *Id*. at 1597 (emphasis added). Further, although the Florida crime had an overt act element, the Court did not look only to the elements of the underlying substantive crime as we arguably did in *Brown*. Instead, it focused its analysis on "whether the conduct encompassed by the

*elements of the offense*, in the ordinary case, presents a serious potential risk of injury to another." *Id*. (emphasis added).

The Court first examined the elements of the offense at issue in *James*—attempted burglary under Florida law. *Id*. at 1594. Pursuant to Florida statute, the crime of attempted burglary is complete when the defendant performs "any act toward the commission" of the offense of burglary. Fla. Stat. § 777.04(1). The Florida courts, however, have interpreted the statute more narrowly to require an "overt act directed toward entering or remaining in a structure or conveyance." *James*, 127 S. Ct. at 1594 (quotation omitted). The Court then compared the "risk posed by attempted burglary" to the risk "posed by its closest analog among the enumerated offenses" which the *James* majority determined was completed burglary. *Id*. It concluded the potential risk of physical injury posed by attempted burglary under Florida law was comparable to the potential risk inherent in a completed burglary. *Id*. at 1594-96. According to the Court, that risk "arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party . . . who comes to investigate." *Id*. at 1594. Because Florida law does not criminalize an overt act unless it is directed toward the entering of a building or structure, attempted burglary carries at least the same risk of such face-to-face confrontation and, thus, the ordinary Florida case of attempted burglary presents a serious potential risk of

physical injury to others. *Id*. at 1597-98. The Court rejected James' argument that Florida law criminalizes preparatory conduct involving no risk of a violent confrontation. The Court specifically distinguished *Strahl* and *Permenter*, noting that unlike the Florida statute both Utah and Oklahoma law criminalized mere preparatory conduct. *Id*. at 1595-96, 1596 n.4.

Our analysis of whether Fell's Colorado conviction qualifies as a violent felony under the ACCA is conducted in conformity with *James* and the "formal categorical approach" set out by the Supreme Court in *Taylor v. United States*. 495 U.S. 575, 600 (1990). Although the factual circumstances surrounding Fell's conviction are included in the appellate record, in compliance with *Taylor* we may look "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id*. As directed by *James*, we begin with an examination of the elements of the conviction used to support the application of the ACCA.

Fell was convicted of conspiracy to commit second degree burglary. Under Colorado law, a conspiracy conviction can be sustained with proof of "(1) a real agreement, combination or confederation with a common design; (2) between two or more persons; (3) to accomplish an unlawful purpose which amounts to a crime." *People v. Albers*, 582 P.2d 667, 667 (Colo. 1978). The conspiracy statute also specifically provides that "[n]o person may be convicted of conspiracy to commit a crime, unless an overt act in pursuance of that conspiracy

-12-

is proved to have been done by him or by a person with whom he conspired."

Colo. Rev. Stat. § 18-2-201(2); *see also People v. Schruder*, 735 P.2d 905, 907

(Colo. App. 1986) ("An overt act in furtherance of a conspiracy is required for

conviction of conspiracy."). The term "overt act" is not defined in the Colorado

Criminal Code but the Colorado Court of Appeals has explained that the plain

meaning of the term is not "abstruse." *Schruder*, 735 P.2d at 907. The Colorado

Supreme Court Committee on Criminal Jury Instructions recommends the use of

the following definition of overt act:

> "Overt act" means any act knowingly committed by one of the
> conspirators, in an effort or effect to accomplish some object or
> purpose of the conspiracy. The overt act need not be criminal in
> nature, if conspired separately and apart from the conspiracy. It
> must, however, be an act which follows and tends toward
> accomplishment of a plan or scheme, and must be knowingly done in
> furtherance of some object or purpose of the conspiracy charged in
> the information.

Colo. Jury Instr., Criminal 8(1) Definitions (1993).

The object of the conspiracy for which Fell was convicted was the

commission of second degree burglary. In Colorado,

> [a] person commits second degree burglary, if the person knowingly
> breaks an entrance into, enters unlawfully in, or remains unlawfully
> after a lawful or unlawful entry in a building or occupied structure
> with intent to commit therein a crime against another person or
> property.

Colo. Stat. Ann. § 18-4-203. The parties have not argued that Colorado

convictions for conspiracy to commit second degree burglary require proof the

overt act was directed toward the actual entry into a building or structure and we could find no support for such a position. The language of the Colorado conspiracy statute only states that the act must be committed in furtherance of the ultimate objective of the conspiracy. The recommended definition of the term "overt act" clarifies it is not invariably an illegal act; it can be wholly lawful if committed apart from the conspiracy. Thus, there is no basis upon which this court can conclude the overt act requirement necessary to sustain a Colorado conspiracy conviction is analogous to the Florida overt act requirement analyzed in *James*. Under Colorado law, a jury can convict a defendant of conspiracy to commit second degree burglary without proof that a conspirator committed an act directed toward the entry of the building or structure. Accordingly, the Colorado conspiracy statute is analogous to the Utah and Oklahoma attempt statutes we analyzed in *Strahl* and *Permenter*, where we concluded the statutes permitted criminal convictions if a jury finds a defendant engaged in mere preparatory conduct "'with the kind of culpability otherwise required' for the commission of a burglary." *Strahl*, 958 F.2d at 986 ("[A]n attempted burglary conviction may be based upon conduct such as making a duplicate key, 'casing' the targeted building, obtaining floor plans of a structure, or possessing burglary tools."). This appeal, therefore, presents the very question the Supreme Court deemed unnecessary to resolve in *James*, i.e., whether a conviction for an inchoate crime encompassing preparatory conduct is a violent felony. *James*, 127 S. Ct. at 1596

("Given that Florida law, as interpreted by that State's highest court, requires an overt act directed toward the entry of a structure, we need not consider whether the more attenuated conduct encompassed by such laws presents a potential risk of serious injury under ACCA.").

To obtain a conspiracy conviction, the state of Colorado must prove the defendant had both the specific intent to agree or conspire to commit a particular criminal offense *and* the specific intent to commit or attempt to commit that criminal offense. *Palmer v. People*, 964 P.2d 524, 527 (Colo. 1998). Thus, in addition to the overt act element, conspiracy to commit second degree burglary also has the element of an agreement between two or more persons to commit an unlawful act. In this way, Fell's conviction differs from the attempted burglary convictions we analyzed in *Strahl* and *Permenter*, both of which required overt acts but not felonious agreements.

Chiefly because of the agreement element, the Supreme Court has characterized the crime of conspiracy as posing "a threat to the public over and above the threat of the commission of the relevant substantive crime–both because the combination in crime makes more likely the commission of other crimes and because it decreases the probability that the individuals involved will depart from their path of criminality." *United States v. Jimenez Recio*, 537 U.S. 270, 275 (2003) (quotations and alterations omitted). *James* instructs us to measure the risk of physical injury posed by conspiracy to commit second degree

-15-

burglary against the risk posed by the completed crime of burglary.  127 S. Ct. at 1594.  If the risk is comparable, Fell's conspiracy conviction is properly characterized as a violent felony.  *See id.* (analyzing "whether the risk posed by attempted burglary is comparable to that posed by its closest analog among the enumerated offenses").  The Court's characterization of conspiracies as presenting a greater threat to the public than the threat from the commission of substantive offenses might, at first blush, appear to definitively support the conclusion that conspiracy to commit second degree burglary presents a risk of physical harm to others comparable to completed burglary.  Upon closer examination, however, the Court's statement in *Jimenez Recio* cannot be read so broadly.

In *Jimenez Recio*, police thwarted a drug conspiracy by seizing the drugs intended for distribution.  537 U.S. at 272.  They then set up a sting operation which resulted in the arrest of defendants, Jimenez Recio and Lopez-Meza.  *Id.* at 272-73.  Defendants appealed their conspiracy convictions, arguing (1) the conspiracy ended once the police seized the drugs and (2) the evidence was insufficient to support the jury's conclusion that they joined the conspiracy before the seizure.  *Id.* at 273-74.  The Court ruled a conspiracy does not automatically terminate once the objective of the criminal agreement has been rendered impossible to achieve.  *Id.* at 274.  To support this conclusion, the Court reiterated that the essence of a conspiracy is the agreement between the

-16-

conspirators. Consequently, the crime of conspiracy is separate and distinct from the substantive crime and a conspiracy conviction is not predicated on the commission of the substantive offense. *Id*. Further, different societal dangers are associated with conspiracies, including the increased likelihood the conspirators will commit other crimes and the decreased likelihood they will abandon their criminal endeavors. *Id*. at 275. "Where police have frustrated a conspiracy's specific objective but conspirators (unaware of that fact) have neither abandoned the conspiracy nor withdrawn, these special conspiracy-related dangers remain." *Id*. Notably, the Court did *not* opine that all conspiracies pose a greater threat of *physical harm* to others than the threat posed by the substantive offense. It simply observed that individuals involved in conspiracies are more likely to engage in additional and more complex criminal activity. *Id*. Although *Jimenez Recio* characterizes concerted criminal activity as posing a greater overall threat to the social order, the Court did not identify that threat as implicating a potential risk of physical injury to others, the heart of the question before us.

Our interpretation of the Court's statement in *Jimenez Recio* is confirmed by the case from which the concept was drawn. In *Callanan v. United States*, the Court held that a substantive offense and conspiracy to commit the offense are separate and distinct crimes for which cumulative sentences may be imposed. 364 U.S. 587, 593 (1961). The Court drew support from the broad principle that a conspiracy poses a different and greater potential threat to society because "the

-17-

danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise." *Id.* This principle, however, is not equivalent to the proposition that conspiracies pose a greater, or even comparable, potential risk of physical harm to others as compared to the underlying substantive crime; the Court did not even address the threat of physical harm, only the general threat to societal order.

The reference in *Jimenez Recio* to the decreased "probability that the individuals involved will depart from their path of criminality" does not translate to an increased risk the substantive crime will occur. The decreased probability that conspirators will not terminate their criminal endeavors merely equates to a continuation of the conspiracy, an inchoate crime, and the consequent risks to societal order. Even if one were to hypothesize that the greater the likelihood the conspiracy will continue, the greater the likelihood the substantive crime will occur, this would still not inform the question before us: whether conspiracy to commit second degree burglary in Colorado poses a risk of physical injury comparable to that of a completed burglary. *James*, 127 S. Ct. at 1594 ("In this case, we can ask whether the risk posed by attempted burglary is comparable to that posed by its closest analog among the enumerated offenses–here, completed burglary.").

In the context of conspiracy to commit second degree burglary, a "decreased likelihood" the conspirators will abandon their criminal endeavor

constitutes nothing more than a mere increase in the theoretical probability the substantive crime of burglary will be completed by one of the conspirators. *Jimenez Recio,* 537 U.S. at 275. Even an increase in the theoretical probability that a burglary will occur does not transform the ordinary Colorado case of conspiracy to commit second degree burglary into an offense "that, by its nature, presents a serious potential risk of injury to another." *James*, 127 S. Ct. at 1597. The *James* Court reiterated that the "main risk of burglary arises . . . not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress." *Id*. at 1594-95. Unlike the situation presented in *James,* where Florida's overt act requirement is never satisfied unless the would-be burglar is actually present at the targeted building and attempting to enter it, we can only speculate at the likelihood that a conspirator involved in an ordinary Colorado case of conspiracy to commit second degree burglary will ultimately travel to the targeted building to complete the substantive crime of burglary. Accordingly, we cannot determine with any degree of certainty that it is probable a conspirator will actually attempt to enter the building. Yet, if the conspirator is not at the building or in the vicinity, the potential risk of physical injury to others is nearly nonexistent. Thus, an increase in the indeterminate and unquantified theoretical probability the burglary will be committed fails to elevate the potential risk of physical harm posed by conspiracy

-19-

to commit second degree burglary to a level comparable to the risk posed by the commission of the enumerated crime of burglary.

Having considered the elements of conspiracy to commit second degree burglary under Colorado law in light of the applicable law, we conclude it is not a violent felony for purposes of the ACCA. Although there is an overt act element, the act need not be directed toward the entry of a building or structure. Once an agreement to burglarize a property is reached, overt acts in furtherance of the collective objective will typically include attenuated conduct such as purchasing tools and supplies, arranging transportation to and from the building, and obtaining plans or maps. Usually such acts can be committed a considerable distance from the targeted property and ordinarily without raising any suspicions on the part of third parties. Thus, many overt acts sufficient to sustain a Colorado conspiracy conviction create no risk of a violent confrontation between the defendant and an individual interacting with the conspirator while the overt act is being committed.

Although the collaborative efforts of two or more individuals to commit second degree burglary admittedly increase the potential risk to the social order because of the increased likelihood of additional and more complex criminal activity, we cannot conclude this elevated risk to society is comparable to the risk of physical harm to others inherent in the enumerated crime of burglary. The increased criminal activity will often consist only of more elaborate and otherwise

lawful preparatory acts, none of which place the conspirators anywhere near the vicinity of the targeted building, or will involve tangential criminal acts that, while unlawful, present no potential risk of physical harm to other persons. For these reasons, we conclude the potential risk of physical harm associated with the Colorado crime of conspiracy to commit second degree burglary is not comparable to the risk associated with the completed crime of burglary.

## IV.    Conclusion

The ordinary Colorado case of conspiracy to commit second burglary does not present a risk of violent confrontation comparable to the risk inherent in a completed burglary. Accordingly, we conclude Fell's Colorado conviction is not a violent felony as that term is defined in 18 U.S.C. § 924(e)(2)(B) and it should not have been used as a basis for the imposition of the armed career criminal enhancement. The sentence imposed by the district court is **reversed** and the case **remanded** for resentencing.