**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 24, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

WALTER LEE DEITER,

        Defendant - Appellant.

No. 17-2159

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. Nos. 1:15-CV-01181-MV-KBM & 1:10-CR-00622-MV-1)**

Submitted on the briefs:[*]

Leah M. Stevens-Block, Sheehan & Sheehan, P.A., Albuquerque, New Mexico, for
Defendant - Appellant.

James D. Tierney, Acting United States Attorney, and James R.W. Braun, Assistant
United States Attorney, Office of the United States Attorney, Albuquerque, New Mexico,
for Plaintiff - Appellee.

Before **PHILLIPS**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted
without oral argument.

**O'BRIEN**, Circuit Judge.

This case raises a run-of-the-mill ineffective assistance of counsel claim.  It also

presents an interesting *Johnson II* claim—whether aiding and abetting (18 U.S.C. § 2)

federal bank robbery (18 U.S.C. § 2113(a)) qualifies as a "violent felony" under the

elements clause of the Armed Career Criminal Act (ACCA).  *See Johnson v. United*

*States (Johnson II)*, --- U.S. ---, 135 S. Ct. 2551 (2015).

## I. Background

On November 12, 2009, at 12:38 a.m., police officers from the Albuquerque, New

Mexico, Police Department were dispatched to an apartment complex to investigate a 911

domestic violence call.  Upon their arrival, they saw Walter Lee Deiter and his wife,

D'Leah Harris, in the middle of the street.  When Deiter and Harris saw the officers, they

separated, each walking in the opposite direction.  Deiter proceeded toward the apartment

complex; Officer Patricia Whelan followed him.  When Deiter went behind a staircase,

Whelan temporarily lost sight of him; he emerged a few minutes later on the second-story

open breezeway.

Whelan told Deiter to come down and talk to her.  He refused and appeared

"nervous[,] . . . looking kind of up and down the breezeway of the second floor."  (R.

Vol. 2 at 199.)  When she again told him to come down, he complied.  But before doing

so, he made a "squatting, bending motion" which led Whelan to believe he had

"dropped" something illegal.  (*Id*. at 201, 206.)  She could not see what was dropped

because a three- to four-foot tall wall obstructed her view.

Once Deiter came down the stairs, Whelan asked Officer Sammy Marquez to determine what had been dropped. As Marquez proceeded up the steps to the second-story breezeway, Deiter took off running. Whelan and Officer Glenn St. Ong chased him. St. Ong brought him to the ground with his taser. Marquez arrived and held his legs down while Whelan handcuffed him. Once he was secured, Marquez went to where Deiter was seen on the second-story breezeway; on the floor he found a holster containing a loaded .22 caliber revolver. Forensic testing revealed Deiter's DNA on both the holster and firearm. The firearm also contained a small amount of DNA from an unidentified source.

A jury convicted Deiter of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). That offense normally carries with it a maximum sentence of 10 years imprisonment. *See* 18 U.S.C. § 924(a)(2). The district judge, however, concluded the ACCA applied because Deiter had two prior convictions for a "serious drug offense" and one prior conviction for a "violent felony." *See* 18 U.S.C. § 924(e). Relevant here, she concluded his 1988 conviction for aiding and abetting bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2 constituted a "violent felony." This conclusion exposed him to a mandatory minimum 15-year sentence (180 months), *see* 18 U.S.C. § 924(e)(1), and increased his guideline range from 92-115 months to 210-262 months. The judge sentenced him to 180 months. We affirmed on direct appeal. *See United States v. Deiter*, 576 F. App'x 814 (10th Cir. 2014) (unpublished).

- 3 -

At the time of Deiter's sentencing in January 2014, an offense was a "violent felony" under the ACCA if it (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the elements clause), (2) "is burglary, arson, or extortion, [or] involves use of explosives" (the enumerated offense clause), or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the residual clause). 18 U.S.C. § 924(e)(2)(B). On June 26, 2015, the United States Supreme Court decided the residual clause is unconstitutionally vague. *Johnson II*, 135 S. Ct. at 2557, 2563. It left intact, however, the elements and enumerated offense clauses. *Id*. at 2563. On April 18, 2016, it made *Johnson II*'s holding retroactive to cases on collateral review. *Welch v. United States*, --- U.S. ---, 136 S. Ct. 1257, 1265 (2016).

Relying on *Johnson II*, Deiter filed a 28 U.S.C. § 2255 motion, claiming his prior bank robbery conviction could not be deemed a "violent felony" supporting the ACCA enhancement. He also argued trial counsel was ineffective for (1) failing to challenge his ACCA sentence and (2) reading a transcript of Whelan's belt tape recorder to the jury which contained an incriminating statement from a witness.

The judge denied the motion. She decided any error in counsel's decision to read the transcript to the jury was not prejudicial in light of the overwhelming evidence against him. She also concluded Deiter's prior bank robbery conviction qualified as a

- 4 -

"violent felony" under the elements clause of the ACCA.[1]  She did, however, grant a

certificate of appealability (COA).

## II. Discussion

A. *Ineffective Assistance of Counsel*

After Deiter was arrested, Whelan canvassed the apartment complex for witnesses.

While doing so, she activated the tape recorder on her belt.  The recorder captured the

following exchange with an unidentified resident at the apartment complex:

> WITNESS: I was sitting on my bed watching a movie and I didn't open the door
> or anything.  I looked in the -- I just heard him yelling and I looked out the peep
> hole and he was yelling at her (inaudible) and all this other stuff *and he had a gun
> at this point*.  I didn't go outside or anything.  I didn't want to get involved.
>
> OFFICER [WHELAN]:  Yeah.  All you heard was yelling then?
>
> WITNESS:  Yeah, really loud.
>
> OFFICER:  Did you hear any specific words of what was being said?
>
> WITNESS:  He said something about, you know, (inaudible) her up and making
> sure she was okay or something like that.  I couldn't really understand what he
> said because they were upstairs.
>
> OFFICER: Yeah.
>
> WITNESS: So I don't really know anything expect they were yelling and I was
> laying here trying to go to sleep and they woke me up.

---

[1] The judge did not specifically address Deiter's ineffective assistance of counsel
claim based on trial counsel's failure to challenge his ACCA sentence.  As we will
explain, *see supra* note 4, her decision that his prior bank robbery conviction constitutes a
"violent felony" under the ACCA's elements clause demonstrates any *Johnson II* error at
sentencing was harmless.  Deiter cannot show he was prejudiced by counsel's
performance.  *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

OFFICER: Okay.  Did anybody get hit, anything like that?

WITNESS: No.  I just saw him.  He went upstairs and then (inaudible).

OFFICER: Okay.  Crazy night in your apartment building.

(D. Ct. Doc. 143-4 at 9-10 (emphasis added).)

Prior to trial, Deiter moved to exclude the transcript of this exchange, arguing the witness' statements were hearsay and he could not cross-examine the witness because her identity was unknown.  The government did not oppose the motion.  The judge agreed with the parties but decided the transcript could be used, if necessary, for impeachment purposes.

During cross-examination, defense counsel asked Whelan whether she recalled speaking to a witness who had observed something that night.  When Whelan responded no, counsel sought to refresh her recollection with the belt tape transcript.  After counsel clarified that he did not seek to admit the transcript into evidence, the judge permitted him to read the transcript to the jury.  Counsel did so and then inquired whether Whelan had asked the witness for a name or address.  Whelan admitted the transcript did not reveal such a request.

Deiter says defense counsel's decision to read the transcript to the jury amounted to ineffective assistance of counsel.[2]  According to him, there was no need to read it to

---

[2] It appears this claim is untimely.  Defendants generally have one year from the date their convictions become final to file a § 2255 motion.  *See* 28 U.S.C. § 2255(f)(1). We affirmed Deiter's conviction and sentence on August 19, 2014.  Therefore, his conviction became final on November 17, 2014, when his time to file a writ of certiorari

- 6 -

refresh Whelan's memory or to attack the quality of her investigation; defense counsel could have refreshed her memory by providing her with a copy of the transcript. Counsel's poor choice, Deiter claims, was not only unnecessary, but prejudicial, because the transcript was the only evidence from any witness that positively placed a man, presumably Deiter, in possession of a firearm at the scene. Had counsel not read the transcript to the jury, it would never have been privy to the information contained therein as both parties had agreed not to rely on the transcript.

Ineffective assistance of counsel requires two showings: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a defendant must show "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. We assess the reasonableness of counsel's performance in light of "the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. Our review is "highly deferential," because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 689-90.

---

expired. *See* Sup. Ct. R. 13(1); *Clay v. United States*, 537 U.S. 522, 525 (2003). He had one year from that date, or until November 17, 2015, to file his § 2255 motion. He did not file it until December 10, 2015, in conjunction with the *Johnson II* claim. The *Johnson II* case may save the timeliness of his ACCA claims, *see United States v. Snyder*, 871 F.3d 1122, 1126 (10th Cir. 2017), but it does not breathe new life into his ineffective assistance of counsel claim relating to the reading of the belt-tape transcript at trial. Nevertheless, because the government has not raised timeliness as a defense, we address the claim on its merits. *See United States v. Miller*, 868 F.3d 1182, 1185-86 (10th Cir. 2017) (declining to consider government's timeliness argument raised for the first time in a Fed. R. App. P. 28(j) letter).

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. The focus of the inquiry is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Strickland*, 466 U.S. at 687 (the prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable").

The judge did not reach the reasonableness of defense counsel's actions because Deiter suffered no prejudice:

> While Mr. Deiter insists that the transcript provided the only direct evidence that placed the firearm in his hand, the Court cannot say that but for [defense counsel's] reading of this transcript the result of his jury trial would have been any different. *See Ellis v. Raemisch*, 856 F.3d 766 (10th Cir. 2017). While Officer Whelan did not testify to having an unobscured view of Mr. Deiter holding the firearm, she *did* testify that she saw him squat behind the wall in the same location where the firearm was ultimately found. Indeed, Mr. Deiter's conduct led her to dispatch a fellow officer to determine what Mr. Deiter had left behind the wall. [And] both the firearm and the holster recovered from the breezeway contained Mr. Deiter's DNA, and the holster contained *only* Mr. Deiter's DNA.
>
> Although the Court . . . questions whether [defense counsel's decision] to read aloud the belt tape transcript was the most productive strategy, in light of the other evidence presented against Mr. Deiter it is unwilling to say that the decision "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

(R. Vol. 1 at 149-50.) We agree.

The evidence of possession (the only disputed element) was overwhelming:

- 8 -

Whelan saw Deiter squat down and drop something on the floor of the second-story breezeway; the holster and firearm were later found at that location; Deiter ran from the police when Marquez went looking for what he had dropped; and he was the major contributor of the DNA found on the firearm and the only contributor of the DNA found on the holster. Like the trial judge, we are confident the jury would have reached the same result despite any assumed deficiency in counsel's performance.

Deiter relies on *Freeman v. Leapley*, 519 N.W.2d 615 (S.D. 1994), but it does not help him. Freeman was charged with grand theft of an automobile. *Id*. at 616. At trial, defense counsel offered into evidence a police report containing the hearsay statement of a witness inculpating Freeman in the offense. *Id*. at 618. While defense counsel apparently introduced the statement to show the police did not undertake a thorough investigation, the court questioned the reasonableness of that decision because counsel could have accomplished the same goal without admitting the statement. *Id*. Nevertheless, the court found Freeman had not been prejudiced by any deficient performance because the evidence against him was overwhelming. *Id*. at 618-19. So, too, in this case. Even if counsel's performance was deficient,[3] Deiter, like Freeman, has not shown prejudice.

---

[3] We don't see this case as substantially similar to *Freeman*, where the witness explicitly named Freeman as the car thief. In this case, the witness merely reported seeing a man with a gun. Because she did not name names, defense counsel reasonably used that statement, as well as Whelan's lack of follow-up investigation, to suggest to the jury that the man the witness saw was not Deiter. While we need not weigh in on the reasonableness of counsel's performance, it appears counsel's decision to read the

- 9 -

B. *ACCA Sentence*

Our review is de novo.  *United States v. Ridens*, 792 F.3d 1270, 1272 (10th Cir.

2015).  In the district court, Deiter claimed the judge improperly used his prior conviction

of aiding and abetting a bank robbery as a qualifying offense under the residual clause of

the ACCA.  Basing an enhanced sentence on the residual clause would be a constitutional

error under *Johnson II*'s pronouncements.  Whether the residual clause was the *raison*

*d'etre* for sentencing was intentionally left unaddressed by the judge because his prior

conviction qualifies as a "violent felony" under the elements clause.  Assuming error, it

would have no legal significance (it was harmless as a matter of law) because, as the

judge decided and as we now explain, aiding and abetting bank robbery qualifies as a

"violent felony" under the ACCA's elements clause.[4]  That disposes of Deiter's only

transcript to the jury was part of a "sound trial strategy."  *See Strickland*, 466 U.S. at 689
(quotation marks omitted).  Given the evidence against Deiter, defense counsel's strategy
was not to conclusively show Deiter did not possess the firearm but rather to plant
reasonable doubt in the minds of the jurors as to whether he did so.  To that end, he called
a DNA expert who testified that "secondary transfer" of DNA may explain the presence
of Deiter's DNA on the firearm and holster.  Under that theory, Whelan and Marquez
obtained Deiter's DNA on their hands when they handcuffed him and transferred his
DNA, as well as his or her own (the unidentified DNA), to the holster and firearm when
they touched those items.  He also sought to undermine the thoroughness of Whelan's
investigation by reading the belt tape transcript to her and having her admit she did not
ask the witness for a description of the man with the gun.  Later, during closing
argument, he told the jury that a witness had seen a man with a gun but Whelan never
bothered to ask the witness to describe the man or ask the witness when she observed the
events, thereby suggesting another man left the gun on the second-story breezeway at a
previous time.  While the strategy was far-fetched (given the other evidence) and
ultimately proved to be unsuccessful, we cannot say it was unreasonable, especially in
light of the deference we afford counsel's performance.  *Id.*

[4]  We entertain no doubt, grave or otherwise, as to the effect of the claimed
constitutional error, *see O'Neal v. McAninch*, 513 U.S. 432, 435 (1995); it is harmless.

- 10 -

contested argument on this issue.

An offense satisfies the elements clause of the ACCA if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *See* 18 U.S.C. § 924(e)(2)(B)(i). The Supreme Court has defined "physical force" as "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States (Johnson I)*, 559 U.S. 133, 140 (2010). In deciding whether a prior conviction constitutes a "violent felony" under the elements clause, "we apply the categorical approach, focusing on the elements of the crime of conviction, not the underlying facts." *United States v. Harris*, 844 F.3d 1260, 1263 (10th Cir. 2017). That approach constrains our review. *See Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) ("Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction rested upon nothing more than the least of the acts criminalized . . . ." (quotation marks omitted)); *see also Harris*, 844 F.3d at 1268 n.9 ("In applying the categorical approach, the Supreme Court has instructed us to identify the least culpable conduct criminalized by the state statute."). We now proceed to do so.

18 U.S.C. § 2113(a) provides in relevant part:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, . . . any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both.[5]

---

[5] Section 2113(a) also prohibits (1) "obtain[ing] or attempt[ing] to obtain by

- 11 -

Deiter argues § 2113(a) is not a "violent felony" under the ACCA's elements clause because it includes bank robbery by intimidation, which does not satisfy the

_____

extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank" and (2) "enter[ing] or attempt[ing] to enter any bank . . . with intent to commit in such bank . . . any felony affecting such bank . . . or any larceny." Deiter has never relied on the latter. Nor did he raise the former in the district court. In this appeal (for the very first time), he argues "by force and violence," "by intimidation" and "by extortion" are not separate elements but rather three separate means of committing the single crime of bank robbery. *See Mathis v. United States*, --- U.S. ---, 136 S. Ct. 2243 (2016). Relying on that premise, he says neither bank robbery by intimidation nor bank robbery by extortion satisfies the elements clause. The government points out that Deiter did not raise his means versus elements or bank robbery by extortion arguments in the district court, restricting our review of them to plain error. His problems are more fundamental; he has waived appellate review of those arguments altogether.

He did not raise those arguments in the district court (even though *Mathis* was decided early on in those proceedings) and has not requested plain error review on appeal, either in his opening or reply brief, which "'surely marks the end of the road for an argument for reversal not first presented to the district court.'" *United States v. Lamirand*, 669 F.3d 1091, 1098 n.7 (10th Cir. 2012) (quoting *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011)); *cf. United States v. Courtney*, 816 F.3d 681, 684 (10th Cir. 2016) (reviewing argument for plain error in criminal appeal where appellant "argued plain error fully in his reply brief"). Not only that, he did not object to the magistrate judge's report and recommendation in which she concluded that § 2113(a)'s alternatives—"by force and violence or by intimidation" and "by extortion"—are elements. As such, she applied the modified categorical approach to determine which alternative element formed the basis of Deiter's underlying conviction. Looking to the indictment, she found it "clear that he was convicted of federal bank robbery 'by force, violence, and intimidation' and not of bank robbery by extortion." (R. Vol. 1 at 120.) We have "adopted a firm waiver rule under which a party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *See Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005). While we have recognized two exceptions to this rule, neither applies here because Deiter was and is represented by counsel, he was informed of the time period for objecting and the consequences of not doing so, and he has not attempted to show the interests of justice require review. *Id.* (the firm waiver rule does not apply "when (1) a *pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object, or when (2) the interests of justice require review" (quotation marks omitted)). Due to the waiver, we need not address the elements versus means conundrum.

- 12 -

violence test. According to him, the elements clause requires the <u>intentional</u> use, attempted use, or threatened use of physical force against a person. *See Leocal v. Ashcroft*, 543 U.S. 1 (2004). Section 2113(a), on the other hand, is a general intent crime requiring only that the defendant know he was physically taking the money (the *actus reus*), not that he intended to intimidate. Indeed, whether an act is intimidating depends on whether the victim reasonably feared injury from the defendant's actions. Therefore, Deiter posits, a defendant can be convicted of bank robbery even if he did not intend for an act to be intimidating; in other words, a conviction can rest simply on reckless or negligent conduct, which is not enough.[6] *See United States v. Zuniga-Soto*, 527 F.3d 1110, 1124 (10th Cir. 2008). He faces a substantial headwind.

We recently decided that federal bank robbery by intimidation categorically "has as an element the use, attempted use, or threatened use of physical force" because intimidation involves the threatened use of physical force against the person of another. *See United States v. McCranie*, 889 F.3d 677, No. 17-1058, 2018 WL 2050093, at *3-4 (10th Cir. May 3, 2018); *see also United States v. Ybarra*, --- F. App'x ---, No. 17-2131, 2018 WL 1750547, at *3-4 (10th Cir. Apr. 12, 2018) (unpublished); *United States v.*

---

[6] The Supreme Court recently granted certiorari review in *Stokeling v. United States* (S. Ct. No. 17-5554), to decide whether the Florida robbery statute, Fla. Stat. Ann. § 812.13, satisfies the ACCA's elements clause. More specifically, the Court will decide whether a state law's robbery statute which requires the defendant to overcome the victim's resistance is categorically a "violent felony" under the ACCA's elements clause if that state's law requires only slight force to overcome that resistance. Deiter makes no argument regarding the level of force necessary to commit federal bank robbery. Accordingly, we decline to hold this case in abeyance until *Stokeling* is decided.

*Higley*, --- F. App'x ---, No. 17-1111, 2018 WL 1252093, at *2 (10th Cir. Mar. 9, 2018) (unpublished); *United States v. McGuire*, 678 F. App'x 643, 645-46 (10th Cir. 2017) (unpublished).[7] These decisions align with every circuit to have addressed the issue.[8] Deiter's *mens rea* argument is unconvincing.

First, his reliance on *Zuniga-Soto* is misplaced. There, we held that a crime requiring a *mens rea* of recklessness does not qualify as a "crime of violence" under USSG's § 2L1.2's elements clause. 527 F.3d at 1124. However, we have since recognized the Supreme Court's decision in *Voisine v. United States*, --- U.S. ---, 136 S. Ct. 2272 (2016). *See United States v. Pam*, 867 F.3d 1191, 1208 (10th Cir. 2017). "A statute requiring proof only that the defendant acted willfully and with reckless disregard for the risk posed by that act to another person may categorically involve the use of physical force" under the ACCA.[9] *Id.*

_____

[7] *Higley* and *McGuire* addressed whether bank robbery by intimidation constitutes a "crime of violence" under the elements clauses of 18 U.S.C. § 924(c)(3)(A) and USSG § 4B1.2, respectively. However, those clauses are nearly identical to the ACCA's elements clause and Deiter does not provide any reason for treating them differently.

[8] *See United States v. Ellison*, 866 F.3d 32, 36-37 (1st Cir. 2017); *United States v. Wilson*, 880 F.3d 80, 84-85 (3d Cir. 2018); *United States v. McNeal*, 818 F.3d 141, 153-54 (4th Cir. 2016); *United States v. Brewer*, 848 F.3d 711, 715-16 (5th Cir. 2017); *United States v. McBride*, 826 F.3d 293, 295-96 (6th Cir. 2016); *United States v. Campbell*, 865 F.3d 853, 856 (7th Cir. 2017); *United States v. Harper*, 869 F.3d 624, 625-27 (8th Cir. 2017); *United States v. Watson*, 881 F.3d 782, 785 (9th Cir. 2018); *In re Sams*, 830 F.3d 1234, 1238-39 (11th Cir. 2016).

[9] *Zuniga-Soto* involved the elements clause of § 2L1.2, not that of the ACCA. For that reason, *Pam*, an ACCA case, expressly declined to decide whether *Voisine* had overruled *Zuniga-Soto*. *See Pam*, 867 F.3d at 1207 n.15. Nevertheless, a panel of this Court has applied the reasoning of *Pam* to the elements clause of USSG § 4B1.2 because it is identical to that of the ACCA and the defendant had not provided any basis for

- 14 -

In any event, § 2113(a) requires more than mere recklessness or negligence, *see Leocal*, 543 U.S. at 9 ("[T]he use of physical force against the person or property of another . . . most naturally suggests a higher degree of intent than negligent or merely accidental conduct") (quotation marks omitted); it "requir[es] proof of *general intent—* that is, that the defendant possessed knowledge with respect to the *actus reus* of the crime (here, the taking of property of another by force and violence or intimidation)." *See Carter v. United States*, 530 U.S. 255, 268 (2000). Relying on *Carter*, other circuits have held that to be convicted of bank robbery by intimidation, the defendant must have at least known his actions were objectively intimidating.[10] Our case law and pattern criminal jury instruction support this conclusion. *See McCranie*, 2018 WL 2050093, at *3 ("[E]very definition of intimidation requires *a purposeful act* that instills objectively reasonable fear (or expectation) of force or bodily injury." (emphasis added)); *United States v. Mitchell*, 113 F.3d 1528, 1531 (10th Cir. 1997) ("In determining whether the evidence is sufficient to support a finding of intimidation in the context of a bank robbery, we look to three factors: (1) whether the situation appeared dangerous, (2) *whether the defendant intended to intimidate*, and (3) whether the bank personnel were reasonable in their fear of death or injury." (emphasis added)); *Ybarra*, 2018 WL 1750547, at *3 ("[I]ntimidation under the federal bank-robbery statute could exist only if

---

treating them differently. *See United States v. Sarracino*, --- F. App'x ---, No. 17-2168, 2018 WL 1252095, at *2 n.3 (Mar. 9, 2018) (unpublished).

[10] *See Ellison*, 866 F.3d at 38-39; *Wilson*, 880 F.3d at 85-88; *McNeal*, 818 F.3d at 155-56; *McBride*, 826 F.3d at 296; *Campbell*, 865 F.3d at 856-57; *Watson*, 881 F.3d at 785; *United States v. Horsting*, 678 F. App'x 947, 949-50 (11th Cir. 2017) (unpublished).

- 15 -

the defendant had *intentionally acted in a way that would cause a person of ordinary sensibilities to fear bodily harm*." (emphasis added) (quotation marks omitted)); 10th Cir. Pattern Jury Instruction 2.77 ("[A] taking would not be by 'means of intimidation' if the fear, if any, resulted from the alleged victim's own timidity rather than some intimidating conduct on the part of the defendant. The essence of the offense is the taking of money or property accompanied *by intentional, intimidating behavior on the part of the defendant*." (emphasis added)).[11]

Deiter resists this result, saying his case is different because he pled guilty to <u>aiding and abetting</u> federal bank robbery. According to him, aiding and abetting under 18 U.S.C. § 2 must be analyzed separately from the underlying crime and is not a categorical "violent felony" because § 2 does not have as an element the use, attempted use, or threatened use of physical force. He analogizes aiding and abetting to conspiracy and attempt crimes, both of which this Court has decided are generally not violent felonies because they criminalize mere preparatory conduct. *See United States v. Martinez*, 602 F.3d 1166 (10th Cir. 2010); *United States v. Fell*, 511 F.3d 1035 (10th Cir. 2007). We are not persuaded.

---

[11] Deiter claims our case law and pattern jury instruction are not relevant because his underlying conviction occurred in the Southern District of Florida and, as a result, Eleventh Circuit law controls. Yet, as we explain below, *see supra* note 12, he tries to avoid Eleventh Circuit law when it is unfavorable to him. He cannot have it both ways. Nevertheless, the Eleventh Circuit has rejected his arguments. *See Horsting*, 678 F. App'x at 949-50.

18 U.S.C. § 2 provides in relevant part: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." "[U]nder § 2 those who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime." *Rosemond v. United States*, --- U.S. ---, 134 S. Ct. 1240, 1245 (2014) (quotation marks omitted). "[A] person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission," i.e., "with full knowledge of the circumstances constituting the charged offense." *Id*. at 1245, 1248-49; *see also Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949) ("[T]o aid and abet another to commit a crime it is necessary that a defendant in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." (quotation marks omitted)); *United States v. Rosalez*, 711 F.3d 1194, 1205 (10th Cir. 2013) (for an aiding and abetting conviction, the government must prove the defendant "shared in the intent to commit the underlying offense, willfully associated with the criminal venture, and aided the venture through affirmative action" (quotation marks omitted)). "Mere presence at a crime scene or knowledge alone that a crime is being committed is insufficient." *Rosalez*, 711 F.3d at 1205 (quotation marks omitted). "[A] defendant must share in the intent to commit the underlying offense." *Id*. (quotation marks omitted).

That being said, "it is well established that aiding and abetting is not an independent crime under 18 U.S.C. § 2; it simply abolishes the common-law distinction between principal and accessory." *United States v. Cooper*, 375 F.3d 1041, 1049 (10th Cir. 2004) (quotation marks omitted). This legal principle led the Supreme Court to conclude that a prior conviction for vehicle theft under Cal. Veh. Code Ann. § 10851(a) was categorically a "theft offense" under the Immigration and Nationality Act even though the California statute also prohibited aiding and abetting the theft. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189-90 (2007).

The generic definition of "theft offense" is the "taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Id.* at 189 (quotation marks omitted). The Ninth Circuit decided the California statute swept more broadly than the generic definition because it permitted conviction for aiding and abetting a theft. *Id.* at 188. It reasoned "one might 'aid' or 'abet' a theft without taking or controlling property" and therefore not satisfy the generic definition. *Id.* The Supreme Court rejected its reasoning:

> Since criminal law now uniformly treats [aiders and abettors and principals] alike, the [generic definition of theft offense] covers such aiders and abettors as well as principals. And the criminal activities of these aiders and abettors of a generic theft must themselves fall within the scope of the term theft in the federal [immigration] statute.

*Id.* at 190 (quotation marks omitted).

The Eleventh Circuit followed suit in *In re Colon*. It decided Colon's conviction

for aiding and abetting Hobbs Act robbery qualified as a "crime of violence" under §

924(c)(3)(A) because the substantive offense, Hobbs Act robbery, has as an element the

use, attempted use, or threatened use of physical force against another.  826 F.3d 1301,

1305 (11th Cir. 2016).  It reasoned:

> Aiding and abetting, under 18 U.S.C. § 2, is not a separate federal crime, but rather an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense.  A person who aids, abets, counsels, commands, induces or procures the commission of an offense is punishable as a principal.  Indeed, under § 2, the acts of the principal become those of the aider and abettor as a matter of law.  Nothing in the language of § 924(c)(1) indicates that Congress intended to vitiate ordinary principles of aiding and abetting liability for purposes of sentencing under that subsection.

> This Court has held that a companion substantive Hobbs Act robbery conviction qualifies as a "crime of violence" under the use-of-force clause in § 924(c)(3)(A).  Because an aider and abettor is responsible for the acts of the principal as a matter of law, an aider and abettor of a Hobbs Act robbery necessarily commits all the elements of a principal Hobbs Act robbery.  And because the substantive offense of Hobbs Act robbery has as an element the use, attempted use, or threatened use of physical force against the person or property of another, . . . then an aider and abettor of a Hobbs Act robbery necessarily commits a crime that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.

*Id*. at 1305 (citations and quotation marks omitted).[12]  The Sixth Circuit joined the chorus

in *United States v. Tibbs*, 685 F. App'x 456, 465 (6th Cir. 2017) (unpublished) (under

plain error review, concluding aiding and abetting Hobbs Act robbery is a "crime of

---

[12] Deiter says we are not bound by *In re Colon*, yet he also insists Eleventh Circuit law controls.  *See infra* note 11.  Convenient, but not compelling.  He also invites us to follow the dissent in *In re Colon*, 826 F.3d at 1306-08 (Marten, J., dissenting).  We decline the invitation.

violence" under § 924(c)(3) because, *inter alia*, Hobbs Act robbery is a "crime of violence"). And we suggested the same in *McGuire*.

There, the district court concluded McGuire's prior bank robbery conviction under § 2113(a) constituted a "crime of violence" under the elements clause of USSG § 4B1.2(1)(i). 678 F. App'x at 645. We agreed and declined to issue a COA. *Id*. at 645-46. In doing so, we noted: "That McGuire was convicted as an aider and abettor and not as a principal is irrelevant to our analysis. Under 18 U.S.C. § 2, 'whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.'"[13] *Id*. at 645 n.3.

*Martinez* and *Fell* are inapposite. In those cases, we decided neither conspiracy nor attempted second-degree burglary under the relevant state law satisfied the ACCA's residual clause, i.e., neither involved conduct presenting a serious potential risk of physical injury to another. *Martinez*, 602 F.3d at 1169-73; *Fell*, 511 F.3d at 1038-44. That is because the relevant state law prohibited mere preparatory conduct, such as the purchasing of tools or reconnoitering, which created no risk of a violent confrontation

---

[13] *McGuire* involved the definition of "crime of violence" under USSG § 4B1.2. The commentary to that guideline states: "'Crime of violence' . . . include[s] . . . aiding and abetting such offense[]." USSG § 4B1.2, comment. (n.1). The ACCA contains no similar language. Nevertheless, *McGuire* did not rely on the guideline commentary, but rather the language of § 2 itself, in deciding that McGuire's conviction as an aider and abettor was irrelevant in deciding whether he had been convicted of a "crime of violence." *Compare McGuire*, 678 F. App'x at 645 n.3, *with United States v. O'Connor*, 874 F.3d 1147, 1149 n.2 (10th Cir. 2017) (concluding fact that O'Connor's conviction was for aiding and abetting a Hobbs Act robbery was immaterial to deciding whether that conviction was a "crime of violence" under § 4B1.2 because the commentary to the guideline states "crime of violence" includes aiding and abetting such offenses).

between the defendant and another person.  *Fell*, 511 F.3d at 1044; *Martinez*, 602 F.3d at 1172-73.  We are not here concerned with the residual clause.[14]  Moreover, unlike conspiracy and attempt, aiding and abetting is not a separate crime but simply eliminates the legal distinction between aiders and abettors and principals.  Therefore, it makes sense to look to the underlying statute of conviction, rather than § 2, to decide whether the elements clause is satisfied.[15]

     **AFFIRMED**.

---

[14] *Fell* did say conspiracy to commit second degree burglary in Colorado did not satisfy the ACCA's elements clause because it did not require the use, attempted use, or threatened use of physical force.  511 F.3d at 1037.  However, it provided no further explanation.  Therefore, it is unclear whether it so decided because (1) Colorado's conspiracy statute did not satisfy that clause, (2) Colorado's second degree burglary statute did not satisfy the clause, or (3) both.

[15] In *Rosemond*, the Supreme Court addressed what the government was required to show to establish a defendant aided and abetted a violation of 18 U.S.C. § 924(c), a "double-barreled crime" which prohibits "[1] using or carrying a firearm [2] when engaged in a crime of violence or drug trafficking crime."  134 S. Ct. at 1245 (quotation marks omitted).  The Court held (1) a defendant's active participation in the underlying drug-trafficking or violent crime is sufficient to establish the affirmative act requirement of aiding and abetting liability and (2) the defendant must have advance knowledge that his confederate would be armed in order to satisfy the intent requirement.  *Id*. at 1243, 1247-49.

Deiter does not rely on *Rosemond* or suggest that he had to have advance knowledge that his co-defendant would use, attempt to use, or threaten to use physical force against the person of another for his prior conviction to be deemed a "violent felony" under the elements clause.  What *Rosemond* teaches is that by pleading guilty to aiding and abetting unarmed bank robbery, Deiter admitted he took an affirmative act in furtherance of the bank robbery with the intent to facilitate that robbery, thereby exposing him to the same liability as a principal.